IN RE ESTATE OF ANNA MCELDERRY.

JOHN DIMMICK, Appellant, v. ST. PATRICKS CATHOLIC CHURCH et al., Appellees.

No. 41904.

DECEMBER 12, 1933.

Welch & Virtue and Robertson & Wolfe, for appellant.

Fred E. Egan and Tamisiea & Tamisiea, for appellees.

CLAUSSEN, J.—■ Anna McElderry died in her home in Missouri Valley, Iowa, on September 13, 1932. On July 26, 1932, an instrument was executed which was offered for probate as her last will and testament. Objections were filed to the probate of this instrument, and in due time the issues presented by the offer and the objections were tried to a jury in the Harrison district court. At the close of proponent's testimony a motion for a directed verdict was made by the objectors which was overruled. At the close of all the testimony, motions for a directed verdict were made by both sides. The objectors' motion was overruled. The proponent's motion was sustained. From such action this appeal is prosecuted.

On the day the purported will was executed, W. J. Burke, a banker in Missouri Valley, and Dr. Fogarty, the family physician of the deceased, went to the home of the decedent. At that time a sister of the deceased's husband was staying with the deceased. Upon arriving at the decedent's home an unsuccessful effort was made to induce her to go to a hospital. After the failure of these efforts, Mr. Burke, who had taken care of the decedent's business for a number of years, requested the sister-in-law and the doctor to leave the room. They complied with this request and went to the front porch, which was at some distance from the room. After some little time Burke recalled them to the room, and at his request each of them signed the instrument, offered as a will, in two places indicated by Burke. The decedent was an elderly woman and at the time of the transaction was in poor health and was evidently very feeble. At the time the instrument was signed by the sister-in-law Ella B. Deal and Dr. Fogarty, the decedent was lying on a daybed in the room. The decedent did not sign the instrument in the presence of either Mrs. Deal or Dr. Fogarty, her signature evidently having been affixed to the instrument before the witnesses were summoned to return to the room. Dr. Fogarty states

that upon his return to the room he signed his name to the instrument in the places indicated by Burke and that nothing was said concerning the character of the instrument or the signature of the decedent on the instrument. The record of the testimony of Mrs. Deal in relation to what took place at the time the instrument was signed by her and Dr. Fogarty is as follows:

"He (Burke) just showed me where to sign. He came on to the porch, where Dr. Fogarty and I were and told us to come in; witness does not remember just what was said. He said he wanted us to sign papers.

"Q. When he (Burke) called you to the room, what did he say to you in the presence of Mrs. McElderry? A. Well, he came on to the porch where Dr. Fogarty and I were and told us to come in.

"Q. What did he say to you? A. I don't remember just what he said.

"Q. Didn't he say anything to you about what you were doing? A. He said he wanted us to sign some papers.

"Q. *State whether or not you knew at the time that you placed your signature twice upon this instrument, whether you knew you were witnessing the signature of Mrs. McElderry? A. Mr. Burke told us that was her signature.*"

And again this witness said:

"The porch where we went is I think thirty or forty feet from where Anna McElderry was on the bed. I did not hear her talk in the room where Mrs. McElderry and Mr. Burke were when Dr. Fogarty and I were out on the porch, not a word. *After some time Mr. Burke came to the door leading out on to the porch and told us to come in.* The porch is on the east side of the house, and the dining room where Mrs. McElderry was is in the southwest part of the house. *Mr. Burke told us to come in and sign, witness to her signature; to come in and witness her signature; that is all he said.* Dr. Fogarty or I did not say anything at that time. Then Dr. Fogarty and I went into the room where my sister-in-law was. When we got in the room where my sister-in-law was Mr. Burke had this paper that I signed, Dr. Fogarty signed this paper first. He signed twice and then they showed me where to sign. Mr. Burke showed me where to sign, and he told me where to sign on this paper (referring to the will in question). He said 'sign on this line.' I don't know

whether he said anything to Dr. Fogarty. When I signed Exhibit 1 it was folded up. * * * Dr. Fogarty did not say anything there when I signed this paper, Exhibit 1, not a word; and I did not say anything, not a word, at the time I signed the paper. Mr. W. J. Burke just pointed out the line on this paper, Exhibit 1, where I was to sign at the time; don't think he said a word; that is my best recollection. After Dr. Fogarty and I had signed Exhibit 1 Mr. Burke took it; if he said anything I don't remember it; after he took Exhibit 1 he put it in his pocket. I don't know for sure what he did with it. He stood and watched us sign it and then he picked it up, and I don't know what he did with it after that.

"Q. Did W. J. Burke say a word to Anna McElderry your sister-in-law, when you and Dr. Fogarty went back into the room? A. No, I don't think so. ** * I don't remember that Burke said anything at that time, don't remember what he called the paper. * * *

"Q. Did your sister-in-law Mrs. McElderry say a word after you and Dr. Fogarty and W. J. Burke went back in the room where she was until Mr. Burke left there? A. No.

"Q. You are positive of that? A. Yes sir. She did not make a sign or gesture or anything of that kind after Dr. Fogarty and Mr. Burke went back into the room where she was until after Mr. Burke left, as I remember.

"Q. You never saw Mrs. Anna McElderry, your sister-in-law, sign Exhibit 1 at all did you? A. No.

"Q. And she didn't tell you that she did sign it? A. No sir.

"Q. *And nobody told you there that she signed it, did they? I mean in the room, nobody said she had signed it? A. No, not that I remember of. I don't think Mr. Burke said anything after Dr. Fogarty and I went back into the room, that is my best recollection.* I don't remember what Mr. Burke called this paper or what he said before I signed it. So far as I remember no one said anything to me as to what this paper was before I signed it, that is right."

The record is conclusive that the instrument was not signed by Mrs. McElderry in the presence of either Mrs. Deal or Dr. Fogarty. The instrument was signed by the witnesses in the presence of Mrs. McElderry and in the presence of each other. Nothing was said by Mrs. McElderry to the witnesses as to the character of the instrument or that the name written on it was her signature; in fact, the

record discloses that she said nothing. Mr. Burke said nothing to the witnesses in the presence of Mrs. McElderry concerning the character of the instrument or the signature which was written upon it. The statements made by Burke in relation to decedent's signature were made to the witnesses while they were on the porch. It is true that Mrs. Deal knew that the signature she witnessed was that of the decedent, but she knew this because Burke had told her so while she was on the porch, and not on account of anything done or said in the presence of decedent. Under the provisions of Code, section 11852, the execution of a will must be witnessed by two competent persons. This does not mean that the instrument must be signed by the testator in the presence of the witnesses. A signature already written upon the instrument may be adopted by the testator in the presence of the witnesses, and such adoption may be inferred from language used by third persons in the presence of the testator and the witnesses. In re Droge's Will, 216 Iowa 331, 249 N. W. 209; In re Hull's Will, 117 Iowa 738, 89 N. W. 979. In the case at bar, however, the signature of the testator was not subscribed in the presence of the witnesses, nor was it adopted by her in the presence of the witnesses, nor can her adoption of it be inferred from anything that was said or done in the presence of the testator and the witnesses. We are agreed that the instrument was not executed in the manner required by law to be admitted in probate as a will. It follows that the motion of the objectors for a directed verdict should have been sustained and that the trial court erred in overruling such motion and in sustaining the motion of proponents for a verdict sustaining the will.

In view of the fact that the will was not executed as required by law, it is entirely immaterial whether the testator was possessed of sufficient mental capacity to make a will, or whether the terms of the instrument were the result of undue influence.

 The only question which can be in issue in this case is whether the instrument is entitled to probate as a will. We have reached the conclusion that it is not. This disposes of the entire case and creates a situation in which the matter may be remanded to the trial court for the entry of judgment dismissing the petition to probate the instrument and denying the allowance of the writing as a will. Frank Cram & Sons v. Central Trust Co., 205 Iowa 408, 216 N. W. 71. The judgment of the trial court is reversed, and the cause is remanded to the trial court, with directions to enter judg-

ment dismissing the petition to probate the instrument and denying probate to the instrument as a will.—Reversed and remanded, with directions.

ALBERT, C. J., and EVANS, KINDIG, and DONEGAN, JJ., concur.