IN RE ESTATE OF STILLWELL E. HARTER.

D. L. BEARD et al., Appellants, v. MRS. FLOY HAY et al., Appellees.

No. 45073.

OCTOBER 22, 1940.

REHEARING DENIED FEBRUARY 14, 1941.

Cross & Hamill, for appellants.

M. R. Hammer, Jr., for appellees.

MILLER, J.—The issue presented by this appeal is a question of law. The facts are not in dispute and the issue is sharply drawn.

Sometime prior to October 14, 1938, the decedent, Stillwell E. Harter, consulted with one J. H. Hahn, a realtor, regarding the drawing of a will and advised Hahn the provisions he desired that it should contain. Hahn undertook to prepare the will and delivered the instrument to Harter on October 14, 1938. At the time that it was delivered, there was a blank space for the naming of an executor, a blank space for the signing of the instrument by decedent and two blank spaces for the signatures of witnesses. When the instrument was offered for probate, it was fully executed. It was prepared on two pages. Page 1 is as follows:

"WILL

"I, Stillwell E. Harter, a resident of the Town of Mingo, Jasper County, Iowa, being a person of full age and of sound mind and memory, do hereby make, publish and declare the following to be my Last Will and Testament hereby revoking all former wills and codicils by me at any time heretofore made, and state as follows:

"I. It is my wish and desire that all past debts, including my funeral expenses, and the expense of my last sickness be paid as soon as possible after my death.

240

"II. I do hereby devise and bequeath to Willis Beard, my son-in-law $1.00; and to my daughter, Mrs. Floy Hay (if she is living, otherwise to her children her share in equal parts), my son Dale Harter, and my daughter, Mrs. Myrna Adkins, each one-third of all my property, both real and personal, and of every kind and nature whatsoever, of which I may die seized, they to have and to hold the same in fee simple for themselves, their heirs, executors, administrators, or assigns forever.

"III. And I do hereby nominate and appoint J. H. Hahn as sole Executor of this my Last Will and Testament, not to be required to give bonds to qualify as such Executor.

"Witness my hand at Mingo, Iowa, this 14th day of October, A. D. 1938.

"STILLWELL E. HARTER"

On page 2 of the instrument appears the following:

"STATE OF IOWA }
                 } ss.
"Jasper County }

"We do hereby certify that on this 14th day of October, 1938, at Mingo in Jasper County, Iowa, Stillwell E. Harter, to us personally known, did, in our presence, sign the foregoing instrument and declare the same to be his Last Will and Testament and we, at his request, and in his presence, and in the presence of each other, do hereunto subscribe our names as witnesses thereto.

"LLOYD ELROD
"CHARLES C. TURNER"

There was competent evidence, which is not disputed, that the signature appearing on the will is the signature of the decedent. However, no witness testifies that he actually saw the instrument signed by decedent. Shortly after the instrument had been delivered to him, Harter was observed at a desk in the stockroom of his garage with the instrument before him and a pen and ink in hand. This witness did not see him actually write upon the instrument. Shortly thereafter Harter got up and went out with the instrument in his hand. He contacted Lloyd Elrod and Charles C. Turner, told them he had prepared his will and that he would like to have them sign it as witnesses.

In presenting the instrument to them for their signatures, page 1 was folded back so that it partly obscured the attestation clause, but left sufficient space for the witnesses to sign in the places prepared for their signatures. They each signed the instrument in the presence of each other and in the presence of the decedent. However, he said nothing to them about having previously signed the instrument, did not exhibit his signature to them, they did not see his signature, nor did they know whether or not it had been signed by him before they affixed their signatures thereto as witnesses.

The cause was tried to the court without a jury, and, at the close of the evidence, findings of fact and conclusions of law were made. The findings of fact were as follows:

''1. The instrument in question bears the genuine signature of the Decedent Stillwell E. Harter, and was in fact signed by him as and for his Last Will and Testament.

''2. It also bears the genuine signatures of Lloyd Elrod and Charles C. Turner who signed it as witnesses thereto at the request of the Decedent, in his presence and in the presence of each other.

''3. The decedent did not sign the instrument in the presence of witnesses. Whether he signed it before or after they did does not appear from the evidence, and is not shown except by the presumption referred to under 'Conclusions of Law.'

''4. In requesting Elrod and Turner to sign the instrument in controversy as witnesses, Decedent produced the instrument, and stated to them that he had prepared his Will and that he wanted them to sign it as witnesses; but he did not exhibit to them his signature thereon. He unfolded only the last sheet upon which the attestation clause appears, and below which they signed. As the paper was placed before them, they did not and could not see his signature where it now appears and do not know whether it was on the paper or not at the time they signed. He did not refer specifically to the signature nor adopt it in any way except to say that he had prepared his Will and desired them to witness it.''

The conclusions of law were as follows:

''1. Since the paper was in fact signed by the Decedent as

and for his Will, it is conclusively presumed that he signed it previous to the signing thereof by the witnesses.

''2. Under the facts found, the instrument was sufficiently witnessed by Lloyd Elrod and Charles C. Turner as competent witnesses thereto.

''3. The instrument in controversy is accordingly entitled to admission to probate as the Last Will and Testament of Stillwell E. Harter, Deceased.''

Pursuant to the foregoing findings of fact and conclusions of law, the court ordered and adjudged that the instrument be admitted to probate as the last will and testament of Stillwell E. Harter, deceased, and, pursuant to said instrument, appointed J. H. Hahn executor to serve without bond. Exception was granted to the contestants and they appeal.

I. Appellants' first proposition challenges the correctness of the court's conclusion of law No. 1. As above pointed out, in the finding of fact No. 3, the court determined that the decedent did not sign the instrument in the presence of the witnesses, and whether he signed it before or after they did does not appear from the evidence and is shown only by the presumption stated in conclusion of law No. 1, namely, that, since the paper was in fact signed by decedent as and for his will, it is conclusively presumed that he signed it previous to the signing thereof by the witnesses. This conclusion of law appears to have been prompted by the positive language used by us in Nixon v. Snellbaker, 155 Iowa 390, 393, 136 N. W. 223, 224. Appellants seek to distinguish our holding in the Nixon case because of the difference in the facts shown by the record therein as contrasted with the record herein. While appellants make a very persuasive argument, we deem it unnecessary to pass upon their contentions because, even were we to grant that the court was warranted in presuming that Harter signed the instrument previous to the signing thereof by the witnesses, nevertheless, he failed to have the instrument properly witnessed in compliance with the statute.

II. Appellants' second proposition challenges the conclusion of law No. 2 wherein the court held that, under the facts found, the instrument was sufficiently witnessed. We are disposed to the view and hold that appellants' contentions in this regard are well grounded.

Section 11850 of the Code, 1935, provides for verbal wills in the event that the estate consists of personal property to the value of the $300. Section 11852 of the Code, 1935, provides that all other wills ''to be valid, must be in writing, signed by the testator, * * * and witnessed by two competent persons''. It is conceded that the instrument involved herein, to be valid, must meet the requirements of section 11852. The question presented for our consideration is the interpretation to be given the words ''and witnessed by two competent persons''.

In the court's finding of fact No. 4, the court determined that, when the paper was placed before the witnesses, they did not and could not see Harter's signature where it now appears and they did not know whether it was on the paper or not at the time they signed it; Harter did not refer specifically to the signature nor adopt it in any way except to say that he had prepared his will and desired them to witness it. This finding of fact finds abundant support in the record and is not challenged by appellees. The question is whether, under such facts, the court was warranted in finding, as a conclusion of law, that the instrument was sufficiently witnessed. We hold that the court erred in so finding.

This court has not heretofore decided the exact proposition here presented to us. The decisions from other jurisdictions are in conflict and we are faced with the necessity of determining which rule appears to be in accord with the decisions of this court heretofore rendered.

Appellees rely upon the case of Dougherty v. Crandall, 168 Mich. 281, 134 N. W. 24, 38 L. R. A., N. S., 161, Ann. Cas. 1913B, 1300. That case reviews a large number of authorities. The specific holding of the court is a little difficult to determine but the case is clearly subject to the interpretation that, under the facts shown by the record herein and the rule there applied, the instrument would be held to be properly witnessed, apparently on the theory that the witnesses are only required to attest the publication of the paper as a will. Here the court properly found, under the evidence, that Harter stated to the witnesses that he had prepared his will and wanted them to sign it as witnesses. While this finding of fact may have been sufficient to support a holding that the decedent published the

instrument as his will in the presence of the witnesses and that they attested such publication of it, we are unwilling to hold that merely attesting the publication of a will is sufficient to meet the requirements of our statute.

In the first place, the statute does not require publication of the will. We expressly recognized that fact in the case of In re Will of Hulse, 52 Iowa 662, 664, 3 N. W. 734, 736, wherein we state:

"The statute requires that the instrument shall be 'witnessed' by two competent witnesses; this is the only requirement as to the attestation of the will. To witness, means 'to see the execution of as an instrument, and subscribe it for the purpose of establishing its authenticity.' This may be done without any declaration by the testator to the witnesses as to the character and purpose of the instrument, which amounts to what is called publication. We conclude that the language of the statute does not require publication of this character."

While the statute does not require publication, it does specifically require that the instrument be signed by the testator. Accordingly, we are disposed to the view that, for the will to be properly witnessed, the signature must be witnessed. Attesting the publication of the instrument is not enough.

Appellants rely upon the case of Nunn v. Ehlert, 218 Mass. 471, 106 N. E. 163, L. R. A. 1915B, 87. The case seems to be directly in point and, since this court has seen fit to cite it with definite approval, we are disposed to the view that the rule therein announced should be applied herein. In that case, the Massachusetts statute is quoted (218 Mass. 471, 473, 106 N. E. 163, 164) as follows: " 'Every person of full age and sound mind may by his last will in writing, signed by him or by a person in his presence and by his express direction, and attested and subscribed in his presence by three or more competent witnesses, dispose of his property, real and personal, * * *.' " This statute is analogous to our own. After a lengthy review of the authorities, the court interprets the statute (218 Mass. 471, 475, 106 N. E. 163, 165) with the following language:

"It may be taken to be settled, therefore, first, that the attestation required by R. L. c. 135, §1, consists in the wit-

nesses seeing that those things exist and are done which the statute requires must exist or be done to make the written instrument in law the will of the deceased; second, that although the act required by R. L. c. 135, §1, is that the will shall be 'signed' by the deceased, yet as matter of construction an acknowledgment by the deceased of a previous signature, made in the presence of the attesting witnesses, is equivalent to signing in their presence.''

Again, at page 165 of 106 N. E., page 476 of 218 Mass., the court states:

''Apart from authority it is manifest that a person does not acknowledge a signature to be his where no signature can be seen. All that he does in such a case is to acknowledge the fact that he has signed. While an acknowledgment of a signature then exhibited to the witnesses is equivalent to signing in their presence, an acknowledgment to the witnesses of the fact that a signature has been made is not the equivalent of signing in their presence. It follows that where the signature is hidden there is not the equivalent of the statutory requirement that the writing shall be 'signed' in the presence of the attesting witnesses.''

The reasoning of the Massachusetts court above quoted was expressly followed by us in the case of In re Will of Pike, 221 Iowa 1102, 1103, 267 N. W. 680, 681. In that case, the decedent asked a Miss Billings whether she would be a witness to her will. The decedent did not have the instrument with her at the time. About two weeks later, a Miss Rule brought the instrument to Miss Billings and asked Miss Billings to sign it; Miss Billings had never previously seen the instrument; she signed it; decedent was not present during any part of this transaction; about a month later decedent thanked Miss Billings for having signed the instrument; decedent at no time exhibited the instrument to Miss Billings. In holding that the will was properly denied probate because not witnessed in conformity with our statute, we state (221 Iowa 1103, 267 N. W. 681) as follows:

''The subscribing witnesses become witnesses from the time they thus sign. They testify from that moment, though

they should be deceased before the instrument is offered for probate. If they have witnessed the instrument in the legal sense of the word 'witnessing', then their such testifying is that when they subscribed their names they perceived and knew that those things existed or were done which the statute requires must exist or be done to make the written instrument, in law, the will of the decedent. In re Boyeus' Will, 23 Iowa 354; Nunn v. Ehlert, 218 Mass. 471, 106 N. E. 163, L. R. A. 1915B, 87. While formally, by subscribing, Miss Billings purports to attest that she had perceived and knew the existence and doing of all such statutory requirements, yet the uncontroverted fact is that she at no time perceived or knew that there had been a signing of this instrument by decedent. Such signing is a statutory essential to make the instrument the will of decedent. Miss Billings had neither seen the instrument signed, nor had testatrix shown and adopted her signature in the presence of the witness, nor indeed could the witness even identify the instrument as having been seen in the possession or presence of the decedent. There seems no avoidance of the conclusion that, excepting in form, the will was not 'witnessed' by Miss Billings, because she was clearly without knowledge of any signing by decedent, the attesting of such signing being an indispensable and essential part of an effective 'witnessing'. She could not by her signature attest a fact not within her knowledge any more than she could as a witness examined in open court."

Another case, which seems to be persuasive, is that of In re Estate of McElderry, 217 Iowa 268, 272, 251 N. W. 610, 612, wherein this court, in holding that a purported will should be denied probate because not properly witnessed, states:

"Under the provisions of Code, section 11852, the execution of a will must be witnessed by two competent persons. This does not mean that the instrument must be signed by the testator in the presence of the witnesses. A signature already written upon the instrument may be adopted by the testator in the presence of the witnesses, and such adoption may be inferred from language used by third persons in the presence of the testator and the witnesses. In re Droge's Will, 216 Iowa 331, 249 N. W. 209; In re Hull's Will, 117 Iowa 738, 89 N. W.

979. In the case at bar, however, the signature of the testator was not subscribed in the presence of the witnesses, nor was it adopted by her in the presence of the witnesses, nor can her adoption of it be inferred from anything that was said or done in the presence of the testator and the witnesses. We are agreed that the instrument was not executed in the manner required by law to be admitted in probate as a will.''

In the foregoing quotation, this court cites with approval In re Will of Droge, 216 Iowa 331, 249 N. W. 209. In that case, we state, at page 334 of 216 Iowa, page 210 of 249 N. W., as follows:

''It is true, as contended by appellant, that a will to be valid must be shown to have been executed with all of the requirements of the statute. That is, the will must be signed by the testatrix in the presence of the subscribing witnesses, or the testatrix must acknowledge her signature to them; and that it must have been signed by the subscribing witnesses at the request of the testatrix.''

In the cases above quoted, this court has committed itself to the proposition that our statute, requiring witnesses to a will, means that the witnesses should see the signing of the will or some act of the testator acknowledging his signature in their presence, which is deemed to be the equivalent of having seen him sign the instrument. Among the definitions of the term ''witness'' included in the New Century Dictionary is, ''In general, one who, being present, personally sees or perceives a thing; a beholder, spectator, or eye-witness.'' In the Hulse case, 52 Iowa 662, 664, 3 N. W. 734, 736, we state: ''To witness, means 'to see the execution of as an instrument, and subscribe it for the purpose of establishing its authenticity.' '' In the Pike case, 221 Iowa 1102, 1103, 267 N. W. 680, 681, we say: ''If they have witnessed the instrument in the legal sense of the word 'witnessing', then their such testifying is that when they subscribed their names they perceived and knew that those things existed or were done which the statute requires must exist or be done to make the written instrument, in law, the will of the decedent.''

Applied to this case, when Elrod and Turner undertook to witness Harter's will, they were required to perceive and know

that it had been signed by Harter. But the court properly found that, when they signed the instrument as witnesses, they did not and could not see his signature where it now appears and did not know whether it was on the paper or not at the time they signed it; he did not refer specifically to the signature nor adopt it in any way except to say that he had prepared his will and desired them to witness it. To say that the statute was complied with, we must first presume that the instrument had been signed by Harter because, in finding of fact No. 3, the court properly found that whether Harter signed it before or after the witnesses does not appear from the evidence and is not shown except, if at all, by the presumption referred to in conclusion of law No. 1. After so presuming that Harter had signed the instrument before the witnesses signed it, we would have to go further and infer or presume that his statement that he had prepared his will was the equivalent of saying, ''I have signed this instrument as my will and now acknowledge such signature so that you may witness it.'' For us to so presume or infer requires us to resort to too much speculation and conjecture in reference to matters which, if the law is to be followed, the witnesses should have perceived and known were then existing and did not. We are unwilling to indulge in such speculation and conjecture. To do so would attribute to the witnesses knowledge they did not possess.

The decision herein required of us would seem to fall within the contemplation of the statement made by this court in the case of McCarn v. Rundall, 111 Iowa 406, 408, 82 N. W. 924, 925, to wit:

''The testamentary right to dispose of property is regulated by the statute, which requires the will to be witnessed in a certain way * * *. And, as said In re Walker's Estate, 110 Cal. 387 (42 Pac. Rep. 815, 52 Am. St. Rep. 104): 'It is not for the courts to say that these requirements, or any of them, are mere formalities, which may be waived without impairing the status of the instrument. It is not for courts to say that a mode of execution or authentication other than that prescribed by law subserves the same purpose, and is equally efficient to validate the instrument.' ''

By reason of the foregoing, we hold that the instrument, purporting to be the will of the decedent herein, did not meet the statutory requirement that it be witnessed by two competent persons, because decedent's signature to the will was not legally witnessed by the subscribing witnesses. The court erred in holding otherwise.

III. Appellants' third proposition challenges the court's conclusion of law No. 3, whereby the court determined that the instrument in controversy is entitled to admission to probate as the will of the decedent. By reason of the position taken by us in division II of this opinion, we must and do hold that this contention of appellants is well taken. The instrument should have been denied probate.

By reason of the foregoing, the order appealed from must be and it is reversed, and it is ordered that the cause be remanded with directions that the instrument, asserted as the will of the decedent herein, be denied probate.—Reversed.

RICHARDS, C. J., and SAGER, BLISS, HALE, OLIVER, HAMILTON, and STIGER, JJ., concur.