Taylor R. McKINNON, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12323.

Criminal Court of Appeals of Oklahoma.

July 18, 1956.

**536**

Alvin C. Bruce, Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Plaintiff in error, Taylor R. McKinnon, defendant below, was charged by information in the District Court of Jefferson County, Oklahoma, with the crime of attempted rape, 21 O.S.1951 § 42, allegedly committed on or about July 5, 1955, in said county and state. He was tried by a jury, convicted of the included crime of assault with intent to commit rape, 21 O.S.1951 §

681, and the jury, being unable to agree on the penalty, left the same to the trial court which fixed the punishment at five years in the state penitentiary and a fine of $500. Judgment and sentence were entered accordingly, from which this appeal has been perfected.

The record, herein, discloses that the defendant asserted he had been coon hunting early on the morning of July 5, 1955, in the neighborhood of the Julian Davis home, and was unable to start his automobile. Julian Davis was leaving home to go to his work as a route man for a bakery. The defendant said he was unable to start his automobile and asked Davis to give him a push. This he did, and the defendant drove down the highway, apparently leaving the Davis home, and Davis proceeded to his work. After the defendant was assured Davis was gone and was a safe distance away, the defendant returned to the Davis home, knocked on the door, and called to Bobby Ruth Davis, wife of Julian Davis. It was early in the morning and she was still asleep, but his call awakened her. She threw on a kimono and went to the door and asked what he wanted. He stated that he wanted a match with which to light a cigarette. She got him a match and thereafter he asked for a drink of water. She got for him the drink of water and he asked her to cook his breakfast for him. She told him to set the glass down on the outside, and when she opened the door, he grabbed her and the assault complained of ensued. During the assault with intent to commit rape, he threw her on the floor and attempted, by use of force and violence, to overcome her power to resist. During the assault she hit him over the forehead with an ashtray, cutting a gash in his head. She grabbed his hand and proceeded to bite a large piece out of the fleshy part of it which was found on the floor, preserved, and offered in evidence. During the assault she also scratched him on his body and about the face. She related that she prayed for strength to overcome his attempt and in desperation she grabbed him by his privates and exerted great pressure on his tes-

ticles, causing him great bodily pain prompting him to thereupon cease the assault and retreat.

The defendant's defense was that they drank some corn whiskey highballs and she went berserk. He contended that he had had relations with her since she was in high school. In this connection she related that he informed her before the assault that he had always wanted her and now he was going to have her. The defendant's explanation of the scratches and the gash on his head was that night he had had a fight with two men whom he did know and that the scratches he sustained were the result of that altercation.

The medical proof, herein, supports Bobby Ruth Davis' contention that assault with intent to commit rape had been committed upon her as evidenced by bruises upon her body, particularly around her legs and the fact that she apparently sustained a frac-tured rib. When she appeared in the doc-tor's office, she was extremely nervous and her elbows were quite red as though considerable pressure had been exerted upon them. Furthermore, the doctor said her left wrist was considerably bruised and there was tenderness on the inner aspects of her thighs.

The defendant admitted on cross-examination that he had had relations with numerous other women. The evidence was ample from which the jury might well conclude the defendant was guilty of the crime of which he stood charged. It has been repeatedly held until it is now axiomatic that the findings of fact are the exclusive province of the jury and where there is sufficient evidence reasonably tending to support the same, the jury's finding will not be reversed, on appeal. Sadler v. State, 84 Okl.Cr. 97, 179 P.2d 479; Dodson v. State, Okl.Cr., 284 P.2d 437; Stuart v. State, Okl.Cr., 280 P.2d 755.

The defendant first complains that the trial court erred in overruling his de-murrer to the information. Apparently, this contention is based upon the proposition that the information fails to allege the defendant's intent. This contention is wholly without merit, in view of the fact that the information clearly alleges intent to attempt to rape, ravish, and carnally know the prosecutrix or have sexual intercourse with her. It is apparent therefore, that the case of Temple v. State, 71 Okl.Cr. 301, 111 P.2d 524, relied on by the defendant, is not in point with the defendant's contention.

The second contention of the defendant is that the trial court erred in refusing to grant a continuance, the defendant then having had two continuances, and discharge the jury, the jury panel in question having been subpoenaed to try this case, on three different occasions from September 12 to October 24, 1955. The defendant further complains that the county attorney predicted, in the county clerk's office, the defendant would fall off a drilling rig to hurt himself to keep from going to trial in this case. This the defendant did do and allegedly hurt his back, which condition formed the basis for the requested continuance. It is urged that though no jurors were present, it is not unlikely that some of them heard of it. The defendant urges for the foregoing reasons the trial court abused its discretion in not granting him motion to discharge the jury panel.

The foregoing premise is a double-barreled attack on the jury panel. The speculative nature of this complaint is apparent. To entitle a defendant to successfully challenge a panel of jurors, the burden is upon the defendant to show that the wrong complained of is such as to have caused the defendant to suffer material prejudice. Taylor v. State, 95 Okl.Cr. 98, 240 P.2d 803; Henderson v. State, 95 Okl. Cr. 342, 246 P.2d 393. Here, the only evidence in support of the statement charged to the county attorney clearly established that when the statement was made, no jurors were present. On both the foregoing issues there is no evidence whatsoever, of prejudice to the defendant arising from either alleged cause of challenge. Therefore, the trial court did not abuse its dis-

**538**

cretion in denying the continuance on these grounds and in refusing to discharge the jury panel.

■ The third contention is that the trial court erred in not granting a continuance because of the indisposition of the defendant's counsel, supported by a doctor's certificate that any undue mental or emotional strain might create necessity for counsel's rehospitalization. This appears in conflict with the statement set forth in the court's order of denial of the defendant's motion. Therein the court said on October 17, 1955, at about 8:30 A.M., the court called Mr. Alvin Bruce at Ardmore by telephone and stated to him that the court was informed he had been ill and Mr. Bruce told the court at that time he had but was feeling pretty good, but that his client was in the McBride Clinic in Oklahoma City. The trial court told Mr. Bruce at that time the case had been continued twice, and he did not want to continue it again and to have his client there on Saturday, October 22, for arraignment even if he had to bring him thereon a stretcher. At 10:30 A.M. on October 22, 1955, both counsel and the defendant appeared before the court, and the defendant was ably represented by Mr. Bruce. Under this state of the record, we cannot say that the denial of continuance on the alleged grounds constitutes an abuse of discretion.

■ The fourth contention of the defendant is though the rule was invoked as to the witnesses, trial court permitted the prosecuting witness to remain in the court room during the entire trial and that the trial court permitted the prosecuting witness to be used in demonstration in the court room. It has been repeatedly held that either party may request that the witnesses be placed under the rule; but, whether the rule be invoked is a matter within the sound discretion of the court. 16 C.J. 841; 23 C.J.S., Criminal Law, § 1010; Barnett v. State, 41 Okl.Cr. 153, 271 P. 956; Harrell v. State, 36 Okl.Cr. 225, 253 P. 516; Agent v. State, 18 Okl.Cr. 281, 194 P. 233; Dean v. State, 51 Okl.Cr. 138,

300 P. 319; Jasper v. State, Okl.Cr., 269 P.2d 375. Moreover, it is within the trial court's discretion to permit one or more witnesses to remain in the court room excluding other witnesses. Agent v. State, supra; Thompson v. State, 73 Okl.Cr. 72, 118 P.2d 269. No doubt the state believed that the presence of the prosecuting witness was essential to a proper presentation of its case. We cannot say that the court abused its discretion in permitting a prosecuting witness to remain in the court room nor do we find that the record supports the proposition that the state was permitted to use the prosecuting witness in prejudicial demonstrations in the court room.

The defendant's fifth assignment presents a point of greatest weight among his contentions. The attorney general concedes the county attorney asked questions which were incompetent and improper. We are of the opinion that questions propounded by the county attorney exceeded the bounds of propriety and approached a degree of prejudice. For instance, when the defendant testified that he had been having relations with the victim of the alleged assault since he was in high school with her, the county attorney interposed the following question: "Taylor, who helped you frame that story, Joe Champion, Bud Shelf, or Alvin Bruce? Which one helped you frame that story?" The court sustained an objection to that question and instructed the jury not to consider it for the reason there was no proof of any kind yet before the jury and it was improper and prejudicial and he asked the jury sincerely to disregard it. On another occasion the county attorney, on cross-examination, referred to the defendant's defense as a fantastic story. The county attorney apologized, the court sustained the defendant's objection and admonished the jury that was the question they were to pass upon.

■ It has been held by this court on numerous occasions that it is improper for the county attorney to repeatedly ask incompetent questions and to state his personal opinions. Neely v. State, 60 Okl.Cr.

99, 61 P.2d 741; Cline v. State, 57 Okl.Cr. 206, 47 P.2d 191, wherein it was said that conduct of the prosecuting attorney in persistently cross-examining the accused by assumptions and insinuations is improper. Therein it was also held that it was improper for the county attorney to state his personal opinions as to the defendant's guilt or to state facts which are not in evidence or in effect seek to get before the jury that which amounts to his own testimony.

■■■■ As part of the fifth proposition the defendant further complains that the assistant county attorney in his closing argument made prejudicial remarks to the jury. The trial court admonished the jury to disregard the same. The record discloses that there was a dispute as to what actually transpired in this regard. Neither the argument of the county attorney nor that of the defendant was recorded. The record shows the county attorney's explanation of his remarks was not denied, hence a high degree of uncertainty surrounds the situation as to just what the assistant county attorney had said. The applicable rule laid down by this court is found in Sweet v. State, 70 Okl.Cr. 443, 107 P.2d 817, 819.

"Ordinarily, error cannot be predicated on mere unexplained excerpts from remarks of counsel to the jury, but enough must appear to advise the appellate court of what preceded alleged objectionable statements and their meaning to be deduced from the context, and whether they were invited or provoked by opposing counsel's remarks."

It is apparent that not enough of the argument appears in the record to safely conclude whether the remarks complained of were invited or provoked by opposing counsel's remarks. In cases of this character, it is wise procedure for counsel to have the arguments preserved in the record.

The defendant's sixth assignment relating to instructions number three and four is entirely without merit.

■■■■ Nevertheless, we are of the opinion that the defendant in this case because of the conduct of the county attorney and the assistant county attorney sustained some prejudice to his rights. But, if this case were tried many times, because of the clear evidence of guilt there is no reason to believe that on another trial an honest jury could arrive at any other verdict than that of the defendant's guilt. Therefore, the error is harmless. Spradling v. State, 93 Okl.Cr. 431, 229 P.2d 212. But, we are of the opinion that the error complained of is of sufficient import as to call for a modification of the confinement period imposed by the judgment and sentence from five years in the state penitentiary to four years in the state penitentiary. 22 O.S. 1951 § 1066. As modified the judgment and sentence is affirmed.

POWELL, J., concurs.