104 N.W.2d 594 (1960)
In the Matter of the ESTATE of Lucille Berry MacVICAR, Deceased.
Don R. BERRY, Executor of the Estate of Lucille Berry MacVicar; Don R. Berry; Ted W. Berry; Donna Sue Berry; and Marion D. Berry, Proponents-Appellants,
v.
LaRue Berry YOUNG and Charlotte Clayton, Contestants-Appellees.
No. 49995.
Supreme Court of Iowa.
August 2, 1960.
*596 Fred T. Van Liew and Harvey Bogenrief, Des Moines, for appellants.
Thomas S. Bown, Corydon, for appellees.
THORNTON, Justice.
This is an action to set aside a will tried to the court sitting as a court of equity. The trial court set aside the will on the theory it was not duly executed. Proponents appeal, their main contentions are the facts and presumptions concerning the due execution of the will require a reversal *597 and contestants are estopped to contest the will.
Decedent, Lucille Berry MacVicar, died March 14, 1958. Her purported will is dated April 12, 1954. The contestants, LaRue Berry Young and Charlotte Clayton, are sisters of decedent. The proponents, Don R. Berry, as executor and individually, and Ted W. Berry, are her brothers, Donna Sue Berry is a niece, and Marian D. Berry, a sister-in-law. All named parties are mentioned in the will.
I. Decedent prepared her own will, consisting of four pages. The first page provided for the disposition of all of her property in equal shares to the brothers and sisters above named except as thereinafter stated. The exceptions referred to the attached three pages containing specific bequests. After the date on page one was decedent's signature, an attestation clause, and signatures of three witnesses.
The evidence is clear decedent requested each of the subscribing witnesses who testified to witness her will. To have the will witnessed decedent folded the will so only the lines for signature of witnesses were visible, all of the typing including the attestation clause and decedent's signature, if it was then on the will, were covered. The first subscribing witness called, Corrine B. Craft, demonstrated the manner in which the will was folded, and testified she did not see decedent sign the will, and, "Q. At the time you signed it, state whether or not her signature was on the paper? A. I don't know." She further testified she did not read any of the will and it consisted of two or more pages. She did not see the other witnesses sign, but testified their signatures and that of decedent were genuine.
Lillian Guhl, another subscribing witness, testified as follows:
"Q. Did she sign Exhibit A in your presence? A. No, * * * No, I wouldn't. I wouldn't know whether it was signed or not. * * *
"Q. You knew what you were signing at the time that you signed this? A. I knew it was a will.
"Q. And you knew Lucille Berry MacVicar's name must be on it to make it a will? A. But I did not see it at the time.
"Q. You didn't see it at the time? A. No."
This witness also testified she did not see the others sign and they did not see her sign. The third subscribing witness, H. U. Garrett, was deceased at the time of the trial.
The foregoing is the material evidence bearing on the execution of the will. It is clear the will was not executed in accordance with our statute, here applicable, section 633.7, Code of Iowa 1954, I. C.A., which provides:
"All other wills, to be valid, must be in writing, signed by the testator, or by some person in his presence and by his express direction writing his name thereto, and witnessed by two competent persons."
To witness means, to see the execution of, as an instrument, and subscribe it for the purpose of establishing its authenticity. In re Will of Hulse, 52 Iowa 662, 664, 3 N.W. 734, 736. The statute contemplates the will must be signed by the testator in the presence of the subscribing witnesses or he must adopt or acknowledge his signature to them and it must be signed by the witnesses at the request of the testator. Such request may be implied from the acts or conduct of the testator or surrounding circumstances. It is not necessary testator publish the will, i.e., declare to the witnesses the character and purpose of the instrument. In re Will of Hulse, supra; In re Estate of Klein, 241 Iowa 1103, 1108, 1109, 42 N.W.2d 593, 596, 597; In re Estate of Hagemeier, 244 Iowa 703, 706, 58 N.W.2d 1, 3; In re Estate of Harter, 229 Iowa 238, 247, 248, 294 N.W. 357; and citations in each of these authorities.
*598 When the witnesses undertook to witness decedent's will they were required to perceive and know that it had been signed by her. In re Estate of Harter, supra; and In re Will of Pike, 221 Iowa 1102, 1103, 267 N.W. 680. The affirmative evidence shows they did not
II. Proponents contend this case comes within the general rule, if proof is made of the genuineness of the signatures of the witnesses and testator a presumption is raised of due execution of the will. In re Estate of Olson, 239 Iowa 1149, 1154, 34 N.W.2d 207; and section 622.24, Code of Iowa 1954, I.C.A., providing:
"When a subscribing witness denies or does not recollect the execution of the instrument to which his name is subscribed as such witness, its execution may be proved by other evidence."
This case is distinguishable. The presumption does not prevail against positive testimony of facts and circumstances surrounding the signing of the instrument to the contrary. In re Estate of Hagemeier, supra. And the provisions of section 622.24 apply only where the witness denies the execution or does not remember. Here the only available witnesses testified to the manner of witnessing and such does not comply with section 633.7.
III. Proponents urge contestants are estopped to contest the will. In their Proposition XV they refer only to $1,340.33 received and not returned by each of the two contestants. In brief points under Proposition XV they refer to the sums received by three nephews of decedent, sons of contestants. Their pleadings in the trial court are brief and express three theories; first, $1,340.33 received and not returned by contestants; second, the sums received and not returned by the nephews; and, third, acquiescence in probating the will. Under rule 344(a) (4) (Third), Rules of Civil Procedure, 58 I.C.A., it is doubtful if anything other than the question of $1,340.33 received by contestants is here for review. And contestants urge proponents have not pleaded estoppel. An examination of proponents' pleadings gives substance to this argument. They have not pleaded with the particularity necessary in pleading estoppel. And if we take as true the pleadings standing alone they fail to disclose an estoppel. See Teagar v. First Nat. Bank of Woodbine, 198 Iowa 107, 109, 199 N.W. 250
However, it is not necessary to decide upon such grounds. An examination of the evidence shows proponents have failed to prove an estoppel.
Equitable estoppel is based on fraudulent conduct or a fraudulent result. One must knowingly take a position with the intention that it be acted upon, and relience thereon by another to his prejudice. Sefcik v. Sheker, 241 Iowa 571, 41 N.W.2d 709; Wheatley v. Cass County, 239 Iowa 932, 31 N.W.2d 871; Maloney v. Rose, 224 Iowa 1071, 277 N.W. 572; Goodwin Tile & Brick Co. v. DeVries, 234 Iowa 566, 13 N.W.2d 310, 155 A.L.R. 346, and citations; and Annotation, 28 A.L.R.2d 121. The burden of proof is on the party alleging and relying on estoppel. In re Trust of Lunt, 235 Iowa 62, 80, 16 N.W.2d 25; and Goodwin Tile & Brick Co. v. DeVries, supra.
The general rule a person is estopped to contest a will where he has accepted benefits is subject to the qualification the contestant not only has full knowledge of the contents of the will but also has full knowledge of the facts and circumstances surrounding the execution of the will; also, though of no application here, the acceptance not be fraudulently induced. And such contestant should return or tender the property received to prevent prejudice. 95 C.J.S. Wills § 330, pp. 184-185; 57 Am.Jur. Wills, §§ 804-805, pp. 544-545; Annotation 28 A.L.R.2d pp. 154-166; and Kostelecky v. Scherhart, 99 Iowa 120, 68 N.W. 591. The reason for return of benefits received is to protect the executor from *599 prejudice both as to costs and subsequent handling of the estate. Where the executor has more funds or property in his possession due contestant without regard to the outcome of the contest the reason for the return or tender of benefits fails and it is not necessary. Annotation 28 A.L.R. 2d 162, 163, citing White v. Mayhall, 25 S.W. 881, 15 Ky.Law Rep. 830, and Gaither v. Gaither, 23 Ga. 521; and 95 C.J.S. Wills § 330, p. 185. See also Holt v. Rice, 54 N. H. 398, 20 Am.Rep. 138, and Medill v. Snyder, 61 Kan. 15, 58 P. 962, 78 Am.St. Rep. 387.
The evidence shows the contestants called on the executor April 2, 1958, for the purpose of reading the will and to obtain their share of available funds. A fair inference from this meeting is, the contestants were fully cognizant of the provisions of the will even though they did not read it at the time. At that time they asked about obtaining money, he showed them bank books and figured out shares for each of the contestants and their brother in California, one of proponents here, and in a few days obtained funds from the account and sent checks to each of them. This money has not been returned or tendered. The executor also took a like amount for himself. At that time all parties had the idea the administration could be completed without the necessity of filing the will or having an executor appointed.
Also at the April 2nd meeting the executor delivered to contestants three envelopes each containing $350 for each of three nephews, sons of contestants. There is no evidence contestants requested this money. The executor said, "I gave them the three envelopes with the $350.00 in each one and they took them away with them." The will provided for the sale of a car and the money to be divided among the three nephews and contained a notation showing the car was sold in November, 1957. Concerning this money the executor testified:
"* * * It was sold before Mrs. MacVicar died and before her death she put $50.00 with the $1,000.00 to make it $1,050.00 and divided in three equal amounts of $350.00 each and put these sums of $350.00 in three different envelopes for her three nephews. She told me to take them down to the lock box at the Capital City State Bank until the time of her death and at the time of her death I was to deliver them to her nephews."
The will was filed May 10, 1958, on December 3, 1958, this action was commenced, at that time the contest was as to the validity of two pages of the will and after the attesting witnesses testified in this action the petition was amended to conform to the proof with leave of court setting up lack of due execution.
There is evidence of one of the contestants knowing of the decedent's idea she could have the first page of a will duly executed as such and add pages later as she wished but none that either of the contestants were aware of their possible legal rights until at or about the time the action was commenced. The record shows neither of contestants or their counsel were aware of lack of due execution until the attesting witnesses testified. Our conclusion is there is not sufficient showing of knowledge upon the part of contestants at the time they received the funds due them. In as much as the record shows they are entitled to more than they have received in any event, a return or tender is not necessary. We are unable to find an affirmative showing of prejudice to the estate or proponents and none of the proponents relied on any word or acts of contestants.
IV. The evidence does not indicate the executor delivered the money for the nephews due to anything said or done by contestants. From the testimony of the executor, he could have been following the oral directions of decedent to deliver the money to the nephews. He does not say he was relying on the acts of contestants and acting pursuant to the will. The proponents have not carried the burden of proof in this regard.
*600 Likewise we do not find contestants acquiesced in the proceeding to probate the will for such a length of time as to estop them or prejudice proponents. The action to contest the will was commenced within seven months of the time it was filed for probate and proponents do not point to any prejudice to them by reason of such delay. And as above pointed out contestants were not sooner aware of grounds to contest the will. It should be noted subsection 3 of section 614.1, Code of Iowa 1958, I.C.A., provides actions to set aside a will shall be brought within two years and such time may be shortened to one year by the executor serving the notice provided in said subsection.
V. Proponents complain the trial court failed to take judicial notice of admissions in contestants' petition that the will was a valid instrument. It is sufficient to say we have examined contestants' petition and the amendment thereto and the amendment strikes all of the petition asking that the first and third pages of the will be admitted to probate and substitutes therefor the amended prayer. The admissions are all superseded by the amendment. Leo v. Leo, 239 Iowa 873, 876, 32 N.W.2d 777.
VI. Proponents further complain because the trial court decided the case on a legal issue sitting as a court of equity. The record shows plainly the proponents so stipulated. The stipulation specifically provided for the waiver of a jury trial.
The decree of the able trial court is affirmed.
Affirmed.
LARSON, C. J., and GARFIELD, THOMPSON and PETERSON, JJ., concur.
HAYS and GARRETT, JJ., take no part.
BLISS and OLIVER, JJ., not sitting.