Max A. CLARK, Appellant,

v.

CONTINENTAL TANK COMPANY, Appellee.

No. 62720.

Supreme Court of Oklahoma.

Oct. 13, 1987.

As Corrected Oct. 20, 1987.

Duke Halley, Woodward, for appellant.

W.D. Greenwood, Huckaby, Fleming, Frailey, Chaffin & Darrah, Oklahoma City, for appellee.

SUMMERS, Justice.

By this decision we hold that the Oklahoma Evidence Code did not change the long-standing rule that gave a trial court discretion as to whether an expert witness may be excepted from the rule requiring sequestration of witnesses. Upon review of other allegations of error as well, we affirm.

### FACTS AND HISTORY

While working in the oil fields plaintiff was severely burned by a flash fire occurring while he was manually draining a piece of production equipment known as a heater/treater. He sued the defendant/manufacturer in products liability, claiming defective design and failure to warn. Defendant in response alleged alteration since manufacture, misuse, and voluntary assumption of a known risk. The jury trial resulted in a defendant's verdict. Plaintiff's appeal went to the Court of Appeals, which affirmed the lower judgment.

We have granted certiorari to address the first impression procedural question.

### I.

■ At the outset counsel for the plaintiff "invoked the rule," which is the phrase customarily used to require witnesses to remain outside the courtroom until they are finished testifying. In the law this is known as the rule of sequestration, or, more recently, the rule of exclusion of witnesses. Defendant's counsel, however, requested leave of the court to allow one of its expert witnesses to remain in the courtroom during the testimony of plaintiff and plaintiff's expert witness, as part of the basis for forming his own opinions. The court granted that request. Plaintiff claims this was error of a reversible nature in his quest on appeal for another trial.

The first statute in the evidence code requiring our analysis is 12 O.S.1981 § 2615, Exclusion of Witnesses:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses. The court may make the order of its own motion. This rule does not authorize exclusion of:
>
> 1. A party who is a natural person; or
>
> 2. An officer or employee of a party which is not a natural person designated as its representative by its attorney.

Plaintiff argues that the statute forbids the presence of the expert in the courtroom other than during his own testimony, period. He urges that such legislative intent may be inferred by the fact that the Oklahoma Code in § 2615 omits what would have been a third exception to the rule and what remains as such an exception in the comparable Rule 615, Federal Rules of Evidence, namely:

> 3. A person whose presence is shown by a party to be essential to the presentation of his cause.

First let us look at the origins of the rule and its purposes. As a truth seeking device it seems to have been early discovered

and long practiced[1] going as far back as the days of Daniel and the story of Susanna.[2]

Its purpose is described in *Geders v. United States*, 425 U.S. 80, 87, 96 S.Ct. 1330, 1347, 47 L.Ed.2d 592 (1976):

"The aim of imposing the rule on witnesses, as the practice of sequestering witnesses is sometimes called, is twofold. It exercises a restraint on witnesses tailoring their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid."

Acknowledging that there is always the possibility of perjured but consistent testimony being worked out in detail in advance, Professor Wigmore maintains:

"But when all allowances are made it remains true that the expedient of sequestration is (next to cross-examination) one of the greatest engines that the skill of man has ever invented for the detection of liars in a court of justice." Wigmore Vol. 6 § 1838 (P. 463)

As universally accepted as this doctrine was in the common law, however, it was equally as widely held that the trial judge had discretion in authorizing individual exceptions to the rule. Wigmore, supra § 1841. For example, trial courts frequently allowed witnesses to remain in court where their assistance in management of the case was deemed essential, such as a key law enforcement officer,[3] or the complaining witness[4] in a crimnal prosecution. This set of exceptions found its way into the Federal Rule 615 above mentioned.

Another exception to the rule has widely been considered to be within the discretion of the trial court, and that is for an expert witness, testifying not as to the truthfulness of facts in controversy, but rendering an opinion based upon a stated or assumed set of facts. In fact such exception has become the general rule, according to *Lewis v. Owen*, 395 F.2d 537, 541 (10th Cir.Okl. 1958)

"The general rule is that, notwithstanding a court order excluding witnesses from the court room during the presentation of evidence, it is within the sound discretion of the court to permit an expert witness to remain in the court room while other witnesses are testifying, and the court's action is reviewable only for abuse of discretion and prejudice to the complaining party." 88 C.J.S. Trial §§ 65–67; *Elizabeth River Tunnel Dist. v. Beecher*, 202 Va. 452, 117 S.E.2d 685; 85 A.L.R.2d 469, Anno. 478. This rule is recognized by the Oklahoma courts. *Sharp v. Pawhuska Ice Co.*, 90 Okl. 211, 217 P. 214; *Oskison v. Bagby*, 172 Okl. 569, 46 P.2d 331.

In addition to the *Sharp* and *Oskison* Oklahoma Supreme Court cases therein cited, there is the earlier case of *Colley v. Sapp*, 44 Okl. 16, 142 P. 989 (1914) in which this court said:

56. Then he put him aside and commanded them to bring the other, and he said to him.... 58. "Now then, tell me under what tree did you catch them being intimate with each other?" He answered "Under an evergreen oak."
60. Then all the assembly shouted loudly and blessed God.... 61. And they rose against the two elders, for out of their own mouths Daniel had convicted them of bearing false witness. 64. And from that day onward Daniel had a great reputation among the people.
The Book of Susanna, Apocrypha of the Old Testament, Revised Standard Version.

1. Wigmore on Evidence, § 1837.

2. Two elders lusted after the beautiful Susanna. When she declined their proposition they publicly accused her of having an adulterous meeting in her husband's garden with a young man who, so they said, fled when they appeared. She was on the verge of being convicted when Daniel spoke up:
   48. "Are you such fools, you sons of Israel? Have you condemned a daughter of Israel without examination and without learning the facts?" 51. And Daniel said to them "Separate them far from each other, and I will examine them."
   52. And when they were separated from each other he summoned one of them and said.... 54. Now then, if you really saw her tell me this: Under what tree did you see them being intimate with each other?" He answered "Under a mastic tree."

3. *Jasper v. State*, 269 P.2d 375 (Okl.Cr.1954).

4. *McKinnon v. State*, 299 P.2d 535 (Okl.Cr.1956); *Ellington v. State*, 94 Okl.Cr. 26, 229 P.2d 902 (1951).

"[I]t is within the discretion of the trial judge, 'when it does fair justice,' to permit a witness to give his opinion upon testimony which he has heard or read, when there is no material conflict in the evidence to which the witness is referred, and from which his opinion is to be formed. Wigmore on Evidence, § 681."

The expert witness exception to the rule is based on sound logic. He is not in court to say what happened or did not happen. He wasn't there. He may only give his opinion based upon "what if" this or that particular set of facts is true. The traditional way to elicit his opinion testimony was by asking him a hypothetical question, which question by law must be based on facts in evidence. *Sooner Const. Co. v. Brown,* 544 P.2d 500 (Okl.1975). Hypothetical questions were sometimes considered cumbersome[5] or subject to abuse,[6] and an alternative to the use of them was in letting the witness hear an uncontradicted portion of the testimony on which to base his opinion, or part of it. *Sharp v. Pawhuska Ice Co., Oskison v. Bagby, Colley v. Sapp,* all supra. The purpose of the rule in preventing collusion was not thereby defeated, since the expert witness must perforce base his opinion on facts that are in the record and before the trier of facts— how is one prejudiced if the expert hear them from the witness stand instead of from friendly counsel?

Disenchantment with the hypothetical question has resulted in such reform as § 2702 of the Oklahoma Evidence Code:

Testimony by Experts.

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise."

This section's last few words indicate that the expert need not testify in any one particular form, such as responding by opinion to a hypothetical question.[7] Which leads us to the following Code § 2703—Bases of Opinion Testimony by Experts:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those *perceived by* or made known to him *at* or before *the hearing.* If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." (emphasis added)

This is the final Code provision we must deal with in resolving the alleged error in allowing defendant's expert witness to listen to plaintiff and plaintiff's expert testify. It is clear that under the common law in Oklahoma such would have been allowed, absent abuse of the trial court's discretion. Only if the 1978 Oklahoma Evidence Code changed that part of the law could plaintiff be correct.

He cites § 2615 to show it has. Section 2615 says the court "shall order witnesses excluded." Does that not mean "all witnesses"? Firstly, it doesnt' say "all." Secondly, the word witness is subject to at least two meanings: (1) One who being present personally sees, hears or otherwise observes a thing; a beholder, spectator or eyewitness[8] and (2) persons sworn to testify for any purpose in a cause,[9] including, for example, an interpreter.[10] It is that first classification of witnesses that has been almost universally excluded from hearing the other witnesses, for the reasons as demonstrated by Daniel. The ex-

---

5. "[I]ntolerably wordy", according to McCormick on Evidence, 2nd Ed., P. 36.

6. Whinery, Oklahoma Evidence, Guide to the Oklahoma Evidence Code, P. 239.

7. Whinery, supra, P. 239.

8. *In re Harters Estate,* 229 Iowa 238, 294 N.W. 357 (1940); *Wigginton v. Order of United Commercial Travelers,* 126 F.2d 659 (CCA Ina.); Blacks Law Dictionary.

9. *McChesey v. Lanning,* N.Y., 18 Johns 388; Blacks Law Dictionary.

10. "An interpretor is a witness and should be sworn." *Com. v. Corsino,* 261 Pa. 593, 104 A. 739, 741 (1918).

pert opinion giver, a member of the second classification of witnesses, has historically [11] been allowed to remain in the courtroom or not within the discretion of the trial judge.

Reading the two sections together we conclude the law has not been so changed in this regard. If under § 2703, the facts or data upon which the expert bases his opinion "may be those perceived by ... him at ... the hearing" it cannot be error to allow him to perceive such facts by listening to the testimony. We cannot conclude that the legislature, either intentionally or unintentionally, altered that rule of procedure by adoption of the Evidence Code.

## II.

■ Plaintiff on appeal takes exception to Instruction No. 10 which defined direct cause. Although plaintiff failed to specifically object to Instruction No. 10 he did timely offer his own requested Instruction No. 8 on the subject of direct cause, and therefore we consider the issue properly preserved for review. The instruction given by the court was taken from "OUJI–CIV. No. 9.6" (as altered for products liability) and read as follows:

"Direct cause means a cause which in natural and continuous sequence produces injury and without which the injury would not have happened. In order for the defect, if any, in the product to be a direct cause it is necessary, that some injury to a person in the plaintiffs situation must have been reasonably forseeable by the manufacturer or designer of the product."

Plaintiff's requested Instruction No. 8 would have read as follows:

"The proximate cause of an injury means the same cause which in natural or continual sequence without the intervention of any other cause produces the injury. And without which the result would not have happend. *It need not be the only cause. It is sufficient if it concurs with some other cause acting at the same time which in combination with it brings about the injury.*" (Emphasis added)

The plaintiff particularly urges that the words underlined in the nongiven requested instruction were significant in their absence from the instruction given, and claims the jury was thus misled on the issue of direct or approximate cause.

In *Fields v. Volkswagen of America,* 555 P.2d 48 (Okl.1976), an appeal from a plaintiff's verdict in products liability, we reviewed such an instruction at the request of the appellant defendant. The instruction objected to by the defendant was the same in essence as requested by the plaintiff in this case. In *Fields* we held the instruction not to be reversible and affirmed.

Again in *Messler v. Simmons Gun Specialties, Inc.,* 687 P.2d 121 (Okl.1984) we reviewed such an instruction on behalf of the defendant-appellant who had lost a products liability case. Again we held that the defendant was not prejudiced by the inclusion of the words missing from the instruction given in this case. In no case have we held that a non-reference to other possible concurring causes is grounds for reversal as prejudicial to the plaintiff. Plaintiff suggests this should be that first case.

■ This court has many times held that a judgment will not be disturbed on appeal for allegedly erroneous instructions unless it appears reasonably certain that the jury was misled thereby. *Smith v. U.S. Gipsum,* 612 P.2d 251 (Okl.1980); *MKT v. Harper,* 468 P.2d 1014 (Okl.1970).

In this case there was no evidence of possible concurring causes other than misuse on behalf of plaintiff. Although it would not have been error, and might even have been preferable to have given the *Fields-Messler* type instruction, we cannot find a reasonable probability that the jury was misled in this case.

---

**11.** Not one case has been brought to our attention where a trial court was held to have abused discretion in allowing an expert witness to hear a limited portion of the testimony and then testify.

We have reviewed plaintiff's complaint with Instruction No. 15 as given, and find no error in putting together the four propositions in one instruction.[12]

■ Plaintiff next contends that it was error for the court to refuse to give his requested instruction no. 16.[13] The plaintiff cites *Cunningham v. Charles Pfizer and Co., Inc.*, 532 P.2d 1377 (Okl.1975) for the proposition that this court held that a plaintiff is entitled to a rebuttable presumption that he would have heeded a warning. Therefore, failure to advise the jury of that fact in this case, according to the plaintiff, was error. This court stated in *Cunningham:*

> "The issue of whether the plaintiff as a reasonably prudent person would have refused to take the vaccine if adequate warning had been given should have been submitted to the jury." Id. at 1382.

In this case it was uncontroverted that no warning had been provided on the heater/treater. However, we think that the evidence here distinguishes it from *Cunningham* in that the plaintiff was experienced with respect to the product and well aware of all the inherent risks involved in its use. The plaintiff was an experienced oil field worker using a piece of equipment with which he had familiarity. Plaintiff was well aware that the safety devices had been disconnected and/or removed and he was aware, by his own admissions, of the inherent risk of using the piece of equipment without such safety devices. Evidence at trial was undisputed that the safety devices were on the product when it left the manufacturer's hands and control and that the product had been altered and/or modified in the field.

Plaintiff and plaintiff's own expert admitted a warning would had been of no use because a warning would not have instructed or informed the plaintiff of anything he did not already know. The plaintiff in *Cunningham* did not have the benefit of such knowledge and experience. On this distinguishing fact it may be presumed that a warning may have aided Cunningham. Further, we note that plaintiff's requested instruction no. 14 "warning required" and plaintiff's requested instruction no. 15 "adequacy of warning" were incorporated in the trial court's instruction and presented to jury as no. 8 and no. 9.[14]

---

**12.** Instruction No. 15 reads as follows:
"The defendant has the burden of proving the following propositions:
1. That the plaintiff's actions were the sole and direct cause of his injury; or
2. That the plaintiff misused the heater/treater, as misuse is defined in these instructions; or
3. That the plaintiff was aware of the danger involved and voluntarily assumed such risk; or
4. That the product was modified after it left the control of the defendant and that such modification was the direct cause of the injury.
If you find from all the evidence that the plaintiff has proved each of the propositions he is required to prove, and that none of the propositions the defendant is requried to prove have been proved, your verdict should be in favor of the plaintiff on the questions of liability. If you do not so find, your verdict should be for the defendant Continental Tank Company."

**13.** Plaintiff's requested Instruction No. 16 reads as follows:
"If you find that the warnings were inadequate, and that such an inadequate warnings rendered the product unreasonably dangerous, then you must also determine whether plaintiff would have refused to use the product if adequate warning had been given.
If the absence of evidence to the contrary, there is a presumption that such warnings would have been heeded. A presumption is a conclusion which the law requires the jury to make from particular facts, in the absence of convincing evidence to the contrary; but, unless so outweighed, the jury is bound to find in accordance with the presumption.
If such contrary evidence is presented, and the test to be applied by you is whether, in the light of all circumstances, a reasonable prudent person and plaintiff's position would have refused to use the product in the manner he was using it at the time if adequate warning or risk had been given."

**14.** Instruction No. 8 reads as follows:
"A product that may involve a risk of harm to persons or property when it is used by an ordinary user in a manner that it is intended or that may reasonably be expected is defective and unreasonably dangerous if it is not accompanied by a warning or instructions that are sufficient to inform an ordinary user of a hazard the user would not reasonably expect. Warnings or instructions for the purpose of preventing possible injury owing to an improper or unintended use might be reasonably expected. If the particular danger would be apparent to an ordinary user from the nature of the product itself or from other information known to the user a warning thereof is not required."

We find the instructions in the case when considered as a whole fairly presented the law applicable.

## III.

The plaintiff raises the proposition that the trial court allowed defendant's exhibit no. 2, which was not formally introduced into evidence, to go into the jury room with other exhibits. In *Negrate v. Gunter*, 285 P.2d 194, 196 (Okl.1955) this Court said:

"It is a general rule in most jurisdictions, both in the absence of and under statute, that when the jury retire to deliberate on their verdict, they may in the court's discretion take with them such books and paper that have been introduced in evidence. The court's action either in sending or refusing to send documents to the jury room will not be interferred with on appeal except in a case of abuse. Of course, documents, photographs and papers not admitted into evidence may not be sent to the jury room".

Here a written statement prepared by the plaintiff went to the jury, although it had not been admitted into evidence. Plaintiff claims the jury's consideration of this document is prejudicial, requiring reversal. The objection that the plaintiff has to the document is not that it was not in fact the truth, but that the defense counsel had underlined certain portions in red, therefore emphasizing them, with the purpose of advancing interpretations or theories favorable to the defendant.

Defendant counters that the sentences underlined were read in open court and in the hearing of the jury by plaintiff's expert without objection. After due inquiry of, and testimony by plaintiff's expert, defense counsel sought to introduce the exhibit together with other exhibits. It was only then that the plaintiff's counsel stated

"I have no objection to (defendant's exhibit) no. 2, other than the fact that it has been altered by counsel by underlining in red portions of it". (Tr. 266)

Defendant's exhibits 3 and 4 (which were photographs) were being offered at the same time. All three exhibits were voluntarily withdrawn by the defense counsel without a ruling from the court. During the course of trial, the photograph exhibit nos. 3 and 4 were introduced into evidence through another witness. At the conclusion of all evidence in the case, defendant's exhibit no. 2 was delivered with other exhibits to the juryroom.

Defense counsel would distinguish *Negrate* inasmuch as the exhibit in that case was never presented, heard by or known to the jury. It had been presented outside the hearing of the jury in support of a motion. Conversely, exhibit no. 2 in this case was fully discussed in the jury's presence and the sentences which had been underlined on said statement were read to the jury by plaintiff's expert, all without objection by plaintiff's counsel. If allowance of the exhibit to go to the jury was error it was harmless error and not a cause for reversal. *Karriman v. Orthopedic Clinic*, 516 P.2d 534 (Okl.1973). Finding no reversible error the judgment of the district court in favor of the defendant/appellee based upon the verdict of the jury is affirmed.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, LAVENDER, SIMMS and WILSON, JJ., concurs.

OPALA, J., concurs in the judgment; I find no reversible or prejudicial errors.

KAUGER, J., dissents.

KAUGER, Justice, dissenting:

I agree with the logic of the holding which vests the trial court with discretion concerning whether an expert witness is

---

Instruction No. 9 reads as follows:
"A warning must adequately inform the ordinary user of the precautions, if any, he must take and the risk, if any, that he is exposed to in use of the product. The warning must reasonably communicate the extent of seriousness of the harm that could result from the danger.

When an adequate warning is given, the manufacturer and the distributor may reasonably assume that it will be read and heeded; and a product bearing such warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."

exempted from the rule requiring sequestration of witnesses. However, I cannot as readily reach the conclusion that the Oklahoma Evidence Code did not change the common law. I am, therefore, reluctant to amend the statute by reinserting language which was deliberately deleted by the Legislature.[1] Generally, the incorporation into state law of a portion of a federal statutory provision indicates an intention not to import the omitted portion.[2] Here, the more appropriate remedy is by legislative, rather than by judicial action.

The appellant raised three allegations of error on appeal: 1) violation of 12 O.S.1981 § 2615 in allowing the appellee's expert witness to remain in the courtroom after the appellant had requested the rule of exclusion; 2) faulty instructions which misstated the law of manufacturer's products liability, thus making a verdict for the appellant impossible; and 3) delivery of a prejudicially marked document, which had not been admitted into evidence, to the jury during its deliberation. Perhaps none of these errors standing alone prejudiced the appellant in the presentation of his case to the jury, but the cumulative effect of these allegations requires that the cause be reversed and remanded for a new trial.

Opala, J., concurs in the dissent insofar as it reaches the conclusion that the Oklahoma Evidence Code is indicative of legislative intent to abrogate the pre-existing common-law rule of sequestration.

1. When on March 10, 1977, the Oklahoma Senate passed SB–276, the Oklahoma equivalent of the Federal Rules of Evidence, the bill contained the subdivision at issue here. When the bill exited the Judiciary Committee of the House of Representatives on April 13, 1978, the third paragraph of § 2615 was no longer included.

2. *Willmus v. Commissioner of Revenue,* 371 N.W.2d 210, 214 (Minn.1985); *AirWork Service Division v. Director, Division of Taxation,* 97 N.J. 290, 478 A.2d 729, 731 (1984); *State v. Greenwald,* 454 A.2d 827, 830 (Me.1982); *Walker v. Wedgwood,* 64 Idaho 285, 130 P.2d 856–857 (1942).