Charles Eldon CUNNINGHAM, Appellee,

v.

CHARLES PFIZER & CO., INC.,
a corporation, Appellant.

No. 46237.

Supreme Court of Oklahoma.
Nov. 19, 1974.

Rehearing Denied March 25, 1975.

As Corrected March 26, 1975.

Morehead, Savage, O'Donnell, McNulty & Cleverdon, C. B. Savage, Harvey A. Rotman, Tulsa, for appellee.

Best, Sharp, Thomas & Glass, Joseph M. Best, Joseph A. Sharp, Tulsa, for appellant.

BERRY, Justice:

Plaintiff brought this action to recover damages for injuries allegedly sustained from ingesting oral polio vaccine manufactured by Charles Pfizer & Company, Inc. [defendant].

The jury returned a verdict for plaintiff for $340,000 and the trial court entered judgment accordingly. Defendant appeals. For reasons hereinafter stated we conclude the judgment of the trial court must be reversed and remanded for a new trial.

The Sabin oral vaccine contains live attenuated polio virus. Producers of the vaccine, including defendant, are licensed by the United States Government.

There are three types of polio virus, Type I, Type II and Type III. There are three corresponding types of monovalent Sabin vaccine, Type I, Type II and Type

III. One must take each vaccine in order to be immunized against all three polio viruses.

There is also a trivalent vaccine which contains all three types of attenuated viruses.

Prior to 1963 the Surgeon General appointed a committee to investigate cases of polio which might have been caused by the vaccine.

In 1963 the Tulsa County Medical Society and the Tulsa City-County Health Department sponsored a mass polio immunization clinic using Sabin oral polio vaccine manufactured by defendant.

A licensed doctor was available at each distribution point to answer questions.

It was stipulated that the vaccine furnished by defendant was produced and manufactured in accordance with U. S. Government specifications.

The evidence indicated members of the medical society sponsoring the program were aware of all existing information concerning any relationship between ingestion of the vaccine and the onset of polio. However, defendant made no effort to furnish this information to participants in the mass immunization program.

On January 20, 1963, plaintiff, who was 15 years old at the time, took Type I vaccine as a part of this program. Defendant gave no direct warning to plaintiff or his parents concerning possible untoward effects of the vaccine.

Within five weeks after he took the vaccine plaintiff contracted a paralytic disease.

Plaintiff's theory in the trial court was to the effect defendant failed to warn him, or his parents, of the risk of contracting polio from the polio vaccine, and this failure to warn rendered defendant liable for all damages plaintiff incurred as a result of taking the vaccine.

Defendant's theory in the trial court was to the effect plaintiff did not contract polio, that if he did, he did not contract it from defendant's vaccine, and defendant had no duty to warn ultimate consumers of risks involved in taking the vaccine, but only had a duty to warn members of the medical society sponsoring the program.

The trial court adopted plaintiff's theory. The court's instruction 7 set out this theory as follows:

"You are instructed that a manufacturer of polio vaccine has the duty to warn consumers of the risks involved in taking the vaccine or the vaccine is considered as being in an unfit condition, thereby being unreasonably dangerous, and subjecting the manufacturer to liability for physical harm caused to the consumer of the vaccine."

Defendant excepted to this instruction.

The remainder of the instructions indicate the only issues submitted to the jury were (1) whether plaintiff contracted polio (2) whether he contracted it from taking defendant's vaccine and (3) the amount of damages.

■ On appeal defendant first contends the trial court erred in applying the theory of strict liability in tort to this case. In Kirkland v. General Motors Corp., Okl., 521 P.2d 1353, we adopted the theory of strict liability in tort set out in Restatement of Torts, 2nd Ed. § 402A. This principle is to the effect that one who sells a product in a defective condition unreasonably dangerous to the user or consumer or to his property is liable for physical harm thereby caused to the ultimate user or consumer or to his property (a) if the seller is engaged in the business of selling such a product and (b) it is expected to and does reach the user and consumer without substantial change in the condition in which it is sold.

In that case we stated:

" * * * we specifically hold that the law hereby established will be applied prospectively to all cases for trial from and after the date the mandate issues herein; and may likewise be applied by the appellate courts in cases which have been tried and are for decision on appeal where it would not prejudice the rights of the litigants."

Defendant contends the trial court erred in applying the theory in this case because this case was tried prior to the time the mandate issued in Kirkland v. General Motors Corp., supra.

■ If we were to reverse the trial court's judgment on this ground, the trial court could apply the principles of Kirkland in the new trial. Furthermore, we note defendant's theory at trial was that the case was governed by strict liability in tort but that theory did not impose liability upon defendant under the facts in this case. Therefore, we conclude the principles enunciated in Kirkland are applicable to this appeal.

■ Defendant next contends the evidence was insufficient to establish plaintiff contracted polio as a result of taking defendant's vaccine.

We note there was medical testimony which tended to establish plaintiff's injuries were sustained as a result of taking defendant's vaccine.

Defendant next contends the trial court erred in submitting the case to the jury because there was no proof of a defect in the vaccine.

Subsection k of the comments under § 402A, supra, states:

"*k. Unavoidably unsafe products.*

"There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. * * * Such a product, properly prepared, and accompanied by proper directions and warning, is not defective nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. * * * The seller of such products, again with the qualification that they are properly prepared and marketed, and proper

warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."

In applying § 402A, supra, courts have construed this comment to mean that in certain circumstances a drug manufacturer has a duty to ensure consumers are warned of known risks involved in taking a drug and a failure to fulfill this duty renders the drug defective within the meaning of § 402A, supra. Davis v. Wyeth Laboratories, Inc., 9 Cir., 399 F.2d 121; Alman Bros. Farms and Feed Mill, Inc. v. Diamond Lab., Inc., 5 Cir., 437 F.2d 1295.

■ Therefore, if a duty to warn existed in the present case, we conclude plaintiff was not required to establish the vaccine was otherwise defective.

Our research has led us to only three cases which have considered the duty of a manufacturer of polio vaccine to warn consumers of the risk of contracting polio from the vaccine. Davis v. Wyeth Laboratories, Inc., supra; Stahlheber v. American Cyanamid Company, Mo., 451 S.W.2d 48; Reyes v. Wyeth Laboratories, 5 Cir., 498 F.2d 1264. All three of these cases held the manufacturer had a duty to warn of the risk of contracting polio from the vaccine.

At the time plaintiff herein took the vaccine defendant was aware of a report of the special advisory committee on oral poliomyelitis vaccine dated December 18, 1962. This report indicated the committee had considered 23 cases of polio associated with administration of Type I vaccine causation, six were inconclusive and ten were not compatible with vaccine causation. The report also indicates 31 million doses of Type I vaccine were given in non-epidemic areas during 1962.

Evidence in the record indicates the 1962 paralytic polio rate from all three types of

polio was between 4.0–7.0 per million. There is no evidence indicating the incidence of Type I polio during this period.

There was testimony there were 12 cases of polio in Tulsa during October and November, 1962, and Oklahoma was an epidemic state prior to 1963.

▉ A duty to warn of known potential risks of drugs had been found to exist even though the chances of the adverse reaction occurring are statistically small. Parke-Davis and Company v. Stromsodt, 8 Cir., 411 F.2d 1390; Sterling Drug, Inc. v. Cornish, 8 Cir., 370 F.2d 82. Therefore, we conclude defendant had a duty to warn plaintiff or his parents of the risk of contracting polio from the vaccine and the failure to warn of this risk rendered the vaccine defective within the meaning of § 402A, supra.

▉ Defendant next contends the trial court erred in instructing the jury that defendant had a duty to warn plaintiff of risks involved in taking the vaccine rather than instructing that defendant's duty was limited to warning the members of the medical society under whose supervision the vaccination was given.

As a general rule it has been held that in cases involving prescription drugs the drug manufacturer has only a duty to warn the prescribing physician.

In Davis v. Wyeth Laboratories, Inc., supra, the court noted the reason for this rule to be as follows:

"* * * In such cases the choice involved is essentially a medical one involving an assessment of medical risks in the light of the physician's knowledge of his patient's needs and susceptibilities. Further it is difficult under such circumstances for the manufacturer, by label or direct communication, to reach the consumer with a warning. A warning to the medical profession is in such cases the only effective means by which a warning could help the patient."

However, with reference to a mass immunization program the court stated:

"Here * * * although the drug was denominated a prescription drug it was not dispensed as such. It was dispensed to all comers at mass clinics without an individualized balancing by a physician of the risks involved. In such cases (as in the case of over-the-counter sales of nonprescription drugs) warning by the manufacturer to its immediate purchaser will not suffice. The decision (that on balance and in the public interest the personal risk to the individual was worth taking) may well have been that of the medical society and not that of appellee. * * *

"We conclude that appellee did not meet its duty to warn.

"This duty does not impose an unreasonable burden on the manufacturer. * * * means of communication such as advertisements, posters, releases to be read and signed by recipients of the vaccine, or oral warnings were clearly available and could easily have been undertaken or prescribed by appellee."

See also Reyes v. Wyeth Laboratories, supra.

In the present case the vaccine was administered as part of a mass immunization program and the evidence does not indicate the doctor present at each center assessed medical risks in light of his knowledge of each patient's needs and susceptibilities. We conclude instruction 7 was not erroneous insofar as it stated defendant had a duty to warn plaintiff, rather than the medical society sponsoring the program, of the risks involved in taking the vaccine.

Defendant next contends the trial court erred in submitting the case to the jury because there was no evidence plaintiff would have refused to take the vaccine if he or his parents had been informed of risks involved in taking the vaccine.

In Reyes v. Wyeth Laboratories, supra, the court considered a similar contention. There the defendant requested the trial court to submit a special interrogatory to the jury concerning whether failure to warn was the proximate cause of a child's

contracting polio in view of the fact that "even with warning they may have proceeded with immunization."

The trial court refused to give such an instruction.

The Court of Appeals held there are two causation issues in most products liability cases (1) was defendant's product the cause in fact of plaintiff's injuries and (2) did the plaintiff's injuries result from the alleged defect in the defendant's product [i. e., the failure to warn].

However, that court held failure to submit the latter question to the jury did not constitute reversible error in that case. In so doing the court stated:

"* * * Where a consumer, whose injury the manufacturer should have reasonably foreseen, is injured by a product sold without a required warning, a rebuttable presumption will arise that the consumer would have read any warning provided by the manufacturer, and acted so as to minimize the risks. In the absence of evidence rebutting the presumption, a jury finding that the defendant's product was the producing cause of the plaintiff's injury would be sufficient to hold him liable.

\*      \*      \*      \*      \*      \*      .

"* * * According to the test we have distilled above, we must assume in the absence of evidence to the contrary that Anita's parents would have acted on the warning, had it been given. * * *"

■ We agree with defendant's contention that as part of plaintiff's cause of action plaintiff must establish he would have refused to take the vaccine if adequate warning had been given.

■ However, we conclude plaintiff was not required to present any direct evidence upon this point because he was entitled to a rebuttable presumption he would have heeded any warning which might have been given. Reyes v. Wyeth Laboratories, supra.

■ In the present case there was evidence which tended to overcome the pre-

sumption. This evidence indicates when plaintiff took the vaccine there was considerable risk of contracting polio from natural sources, there had been 12 cases of polio in Tulsa during October and November 1962, and Oklahoma was an epidemic state prior to 1963.

In these circumstances we conclude the issue of whether the plaintiff as a reasonably prudent person would have refused to take the vaccine if adequate warning had been given should have been submitted to the jury.

We further conclude the test applied should be an objective test, i. e., in light of all circumstances existing on the date plaintiff took the vaccine, would a reasonably prudent person in plaintiff's position have refused the vaccine if adequate warning of risks had been given. See Cobbs v. Grant, 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1, Canterbury v. Spence, 150 U.S. App.D.C. 263, 464 F.2d 772.

Neither party requested such an instruction.

In City of Tulsa v. Dickson, 166 Okl. 206, 26 P.2d 920, plaintiff sought to recover damages as a result of construction of a viaduct along a street upon which his property abutted. The case was tried on an erroneous theory and both parties presented erroneous contentions on appeal.

Neither party had requested an instruction upon the correct theory of law applicable to the case. The trial court's instruction allowed plaintiff to recover if his property had been damaged or a trespass had been committed thereon. We noted the correct rule of law was the city would only be liable if it had established the grade in an unreasonable or unexpected manner.

We held the trial court's failure to instruct upon the City's right to establish the grade in the first instance, and its liability if it did so in an unreasonable manner, constituted a failure to instruct upon a material issue and was fundamental error.

We further held the instruction given was erroneous because it allowed the jury

to find for plaintiff if his property was damaged by defendant's acts and did not refer to defendant's right to do the work or its freedom from liability for consequential damages to plaintiff in the event the grade was reasonable and such as might have been expected under the circumstances.

We conclude the trial court's failure to instruct the jury that defendant would be liable only if its failure to warn was the cause of plaintiff's injury constituted a failure to instruct upon a material issue and was fundamental error. Furthermore, we conclude instruction 7 was erroneous because it allowed the jury to find for plaintiff if no warning was given and the vaccine caused plaintiff's injuries, and did not require the jury to find the failure to warn caused the injury.

The judgment of the trial court is reversed and remanded with instructions to grant defendant a new trial.

WILLIAMS, V. C. J., and LAVENDER, SIMMS and DOOLIN, JJ., concur.

DAVISON, C. J., and IRWIN and BARNES, JJ., concur in result.

HODGES, J., dissents.