PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 10/2/96**

TENTH CIRCUIT

---

MARCIA C. DANIEL and DOUGLAS
DANIEL, individually and as husband and
wife,

        Plaintiffs-Appellants,

    v.

BEN E. KEITH COMPANY,

        Defendant-Appellee.

No. 95-6258

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE W.D. OKLAHOMA
(D.C. No. CIV-94-1077-C)

---

D. Renee Hildebrant (Michael E. Smith, also of Nelson, Sherwood & Brown, with her on
the briefs), Oklahoma City, Oklahoma, for Plaintiffs-Appellants.

Tom L. King (Phillip P. Owens II, also of King, Roberts & Beeler, with him on the brief),
Oklahoma City, Oklahoma, for Defendant-Appellee.

---

Before KELLY, ENGEL[*] and LOGAN, Circuit Judges.

---

    [*] The Honorable Albert J. Engel, Senior United States Circuit Judge, United States
Court of Appeals for the Sixth Circuit, sitting by designation.

LOGAN, Circuit Judge.

Plaintiffs Marcia and Douglas Daniel brought this diversity action for damages against defendant Ben E. Keith Company alleging that an inadequate warning rendered defendant's "Keith's All-Purpose Bleach" defective under Oklahoma manufacturer's products liability law. Marcia Daniel, a former restaurant worker, claims she suffers from Reactive Airway Disfunction Syndrome (RADS) as a consequence of a coworker mistakenly using defendant's bleach to clean deep fat fryers at the restaurant where they were employed.

Marcia Daniel worked as a section leader at Casa Bonita Restaurant, primarily cooking and supervising new employees. On the day of her alleged injuries, in July 1992, she prepared tortillas in a deep fat fryer, then continued with other responsibilities. Her coworker, Markus Schroeder, was attempting to clean three deep fat fryers when instead of using fryer cleaner he mistakenly poured in and boiled approximately one-half gallon of defendant's bleach in each fryer. Marcia Daniel suffered exposure to chlorine gas as a result. Her treating physician identified the chlorine gas emitted from the fryers as the cause of her RADS condition.

Marcia Daniel continued working full-time at Casa Bonita through 1992, but thereafter was only able to work half-time and could not do kitchen work. Casa Bonita retained her as an employee performing office and personnel work and gift shop procure-

ment until the restaurant closed approximately a year later. Plaintiffs contend that Marcia Daniel's condition forecloses her from obtaining other employment; they produced evidence of lifestyle changes caused by her condition. Douglas Daniel testified about his wife's condition and the effect on their lifestyle and finances. In their suit they alleged that defendant's bleach was defective because its label failed to adequately warn of the risks associated with using its product, and that this defect caused their injuries. Defendant responded that Schroeder's negligence was the sole cause of the alleged injuries. The jury returned a defense verdict.

On appeal, the Daniels argue that the district court (1) erred in refusing to give a heeding presumption jury instruction, and abused its discretion in (2) giving a preexisting condition instruction, (3) instructing that ordinary users of defendant's bleach would know of the danger of using it in this fashion, (4) refusing to allow plaintiffs to use a medical records summary exhibit, and (5) commenting to the jury on a witness' relationship to defendant.

I

Plaintiffs argue that the district court erred in refusing to give a "heeding presumption" jury instruction. In diversity cases, federal law controls determinations granting or denying proposed instructions while state law governs the substance of jury instructions. Dillard & Sons Constr., Inc. v. Burnup & Sims Comtek, Inc., 51 F.3d 910, 915 (10th Cir. 1995). We review de novo the district court's application of Oklahoma law. See Romero

v. International Harvester Co., 979 F.2d 1444, 1448 (10th Cir. 1992). Federal Rules of Evidence 301 and 302 govern the effect of presumptions in civil actions. Rule 302 provides that "[i]n civil actions and proceedings, the effect of a presumption respecting a fact which is an element of a claim or defense as to which State law supplies the rule of decision is determined in accordance with State law."

Plaintiffs contend that Oklahoma law requires an instruction in failure to warn cases that it is presumed the plaintiff would have read and heeded an adequate warning; that the burden of proof is on the party seeking to overcome the presumption; and that the district court erred in applying Fed. R. Evid. 301, which imposes on the defendant only the burden of production of evidence to rebut the presumption.

In Oklahoma, a party proceeding under a strict products liability theory--referred to as manufacturer's products liability--must establish three elements: (1) that the product was the cause of the injury, (2) that the defect existed in the product at the time it left the manufacturer, retailer, or supplier's control, and (3) that the defect made the product unreasonably dangerous. Kirkland v. General Motors Corp., 521 P.2d 1353, 1363 (Okla. 1974). The failure to adequately warn of a known potential risk renders a product defective; see Cunningham v. Charles Pfizer & Co., 532 P.2d 1377, 1380-83 (Okla. 1974); Restatement (Second) of Torts § 402A (1964); however, the plaintiff must establish that the failure to warn caused the injury. Cunningham, 532 P.2d at 1382. In this regard Oklahoma recognizes a rebuttable presumption that plaintiff would have read

and heeded an adequate warning. Thus, in the absence of evidence rebutting the presumption, a plaintiff need not produce evidence that she would have acted differently if an adequate warning had been given. But once the opposing party meets its burden to come forward with evidence rebutting the presumption, the presumption disappears. See, e.g., Clark v. Continental Tank Co., 744 P.2d 949 (Okla. 1987) (plaintiff admitted that warning would not have alerted him to something he did not already know, thus, he was not entitled to a heeding presumption); Cunningham, 532 P.2d at 1382-83 (defendant overcame presumption plaintiff would have heeded adequate warning about polio vaccine with evidence that Oklahoma was epidemic state and that without vaccine plaintiff faced "considerable risk" of contracting polio).

The cases are consistent with the Oklahoma Evidence Code.

> Except when otherwise provided by law, when the basic fact of a presumption has been established as provided in Section [2]302 of this Code:
>
> 1. If the basic fact has any probative value of the existence of the presumed fact, the presumed fact shall be assumed to exist and the burden of persuading the trier of fact of the nonexistence of the presumed fact rests on the party against whom the presumption operates; or
>
> 2. If the basic fact does not have any probative value of the existence of the presumed fact, the presumed fact is disregarded when the party against whom the presumption operates introduces evidence which would support a finding of the nonexistence of the presumed fact and the existence of the fact otherwise presumed is then determined from the evidence in the same manner as if no presumption had been operable in the case.

12 Okla. Stat. Ann. § 2303 (footnote omitted).

Here, the basic fact that plaintiffs contend should "giv[e] rise to a presumption" is the alleged inadequate warning on defendant's bleach. 12 Okla. Stat. Ann. § 2301(2) (defining basic fact). An inadequate warning, however, is not necessarily probative of the presumed fact--that an adequate warning would have been heeded. A reasonable person might assume the risk, as in Cunningham, or be shown to have not read the warning, as in Clark. Thus, under Oklahoma law the party against whom the presumption operates, here defendant, may rebut the presumption with evidence of the nonexistence of the presumed fact. Section 2303 recognizes that the presumption operates to "allocat[e] . . . the burden of producing evidence of the non-existence of the presumed fact [that an adequate warning would be heeded] to the party against whom the presumption operates." Evid. Subcom. Note § 2303.

Defendant rebutted the presumption with Schroeder's testimony that a different warning on defendant's bleach would have made no difference because that morning he was in a hurry and did not look at the label. He inadvertently used the bleach instead of the fryer cleaner which he had been trained to use. A different warning label may not have altered Schroeder's action. Thus, any presumption that a different warning would have been heeded disappeared, and plaintiffs continued to carry the burden of proving that the allegedly inadequate warning caused her injury. The district court correctly applied Oklahoma law in refusing to give the heeding presumption instruction.[1]

---

[1] Based on this holding, we need not address plaintiffs' related argument that

(continued...)

- 6 -

II

Plaintiffs argue that the district court abused its discretion by instructing the jury on the measure of damages if the jury found that Marcia Daniel had a preexisting condition aggravated by injuries allegedly suffered from exposure to defendant's bleach.[2] Plaintiffs allege that the record did not support the instruction and telegraphed to the jury that the court had concluded that Marcia Daniel suffered from a preexisting lung condition; that the instruction invited the jury to deny recovery altogether; and that because defendant's theory at trial was that Marcia Daniel suffered no injury, the instruction confused and misled the jury as to the issues they were to determine. Defendant responds

_____

[1] (...continued)
refusal of the heeding presumption jury instruction, coupled with the general verdict form, precludes a determination of the basis for the jury's decision.

[2] The pertinent instruction reads:

MEASURE OF DAMAGES-AGGRAVATION OF PRE-EXISTING CONDITIONS

A person who has a condition or disability at the time of an injury is entitled to recover damages for any aggravation of such pre-existing condition or disability directly caused by the injury. This is true even if the person's condition or disability made him or her more susceptible to the possibility of injury than a normally healthy person would have been, and even if a normally healthy person probably would not have suffered any substantial injury.

If you find plaintiff has a pre-existing condition or disability and it was aggravated, the damages as to such condition or disability are limited to the additional injury caused by the aggravation.

I R. tab D at 19.

that the instruction was proper because the evidence at trial included medical information supporting a finding that Marcia Daniel's condition was related to her other medical problems.

Although we review de novo legal objections to the jury instructions, when the objection concerns the effect of the instruction on the jury we review instead for abuse of discretion. See United States v. Lee, 54 F.3d 1534, 1536 (10th Cir.), cert. denied, 116 S. Ct. 247 (1995). The medical evidence showed that Marcia Daniel suffered from prior health problems, including an earlier allergic reaction to an antibiotic that caused a rash and breathing problems. The evidence also showed that although the chlorine bleach exposure occurred in July 1992, after the roof at Casa Bonita was tarred in December 1992 Marcia Daniel experienced shortness of breath and coughing, and some of her pulmonary function tests were lower than in the weeks just before the roof work. This evidence is consistent with a preexisting condition or predisposition to respiratory problems. The district court did not abuse its discretion by including the preexisting condition language in this damage instruction.

III

Plaintiffs contend that the district court erred by including in the jury instructions the following sentence from the Oklahoma Uniform Jury Instructions: "No warning or instruction is required if the particular danger would be apparent to an ordinary user from the nature of the product itself or from other information known to the user." I R. tab D

- 8 -

at 13.  Plaintiffs contend that there was no evidence that "an ordinary consumer would know the specific result of mixing all-purpose bleach with cooking oil and boiling water," and that this "particular danger" should have appeared in the warning.  Brief in Chief of Appellants at 32-33.

We do not read the Oklahoma cases as requiring warning labels to identify so specifically the consequences of misusing a product.  Oklahoma law provides that when a particular danger exists as a consequence of a foreseeable use, and the danger is not obvious or generally known, a duty to warn arises.  See Duane v. Oklahoma Gas & Elec. Co., 833 P.2d 284, 286 (Okla. 1992).[3]  "A manufacturer must anticipate all foreseeable uses of his product," Smith v. United States Gypsum Co., 612 P.2d 251, 254 (Okla. 1980), not all possible uses.  The evidence did not show that coworker Schroeder used bleach in a foreseeable manner on the morning in question.

---

[3] The duty to warn does not arise for risks associated with unanticipated uses.

> A product is not defective when it is safe for normal handling and consumption and there is no duty to warn where the product is used in an unlikely, unexpected or unforeseeable manner.  Only where the seller has reason to anticipate that danger may result from a particular use, may he be required to give adequate warning of the danger, and a product sold without such warning is in a defective condition.

Duane v. Oklahoma Gas & Elec. Co., 833 P.2d 284, 286 (Okla. 1992) (quoting Restatement (Second) of Torts § 402A cmt. h).

Marcia Daniel acknowledged that she would not pour bleach into a hot skillet or boiling water, and that Schroeder had been trained to clean the fryers with fryer cleaner. She evidently turned on a fan to ventilate because of the chlorine odor. Although Marcia Daniel did not testify that she knew of the risks of RADS from breathing chlorine fumes, her testimony established a general awareness not to use bleach in the way her coworker accidently did. The evidence supported giving the instruction.

IV

Plaintiffs contend that the district court erred in refusing to allow their counsel to use a medical records summary in cross-examining defendant's expert witness and in closing arguments, a ruling we review for abuse of discretion. Graham v. Wyeth Labs, 906 F.2d 1399, 1401 (10th Cir.), cert. denied, 498 U.S. 981 (1990).

Plaintiffs' counsel attempted to use at trial a summary of eighteen one-page pulmonary function test results. The district court refused to allow use of the summary because defense counsel had no opportunity to review it. Plaintiffs contend that defense counsel had timely received copies of all medical records and had an opportunity to review the summary during the lunch hour, and that the ruling prejudiced both their ability to effectively cross-examine defendant's expert and to demonstrate in closing argument that plaintiff suffered an injury.

The use of summaries is addressed at Fed. R. Evid. 1006, as follows:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

Summaries must be accurate and nonprejudicial. Summaries not offered as evidence should be used only with a limiting instruction stating that the summary itself is not evidence. Gomez v. Great Lakes Steel Div., Nat'l Steel Corp., 803 F.2d 250, 257 (6th Cir. 1986).

The documentary evidence here involved was not voluminous, was already admitted and available for use, and was in fact used by defense counsel without undue difficulty. Plaintiffs compiled the summary to facilitate cross-examination and closing argument on a specific area, and as such it was more pedagogical than evidentiary. The district court had earlier instructed counsel for both sides to allow adequate time for opposing counsel to review exhibits, and we cannot say that defense counsel received an adequate opportunity to review the summary for accuracy. Further, the information contained in the summary primarily addressed plaintiffs' damages--not defendant's liability--and the jury did not reach the damages issue. Under these circumstances we conclude plaintiffs suffered no prejudice by the ruling.

V

Finally, plaintiffs allege the district court incorrectly instructed the jury concerning a witness' relationship to defendant. We review evidentiary rulings to determine if the district court abused its discretion in limiting the scope of a witness' testimony. See Messina v. Kroblin Transp. Sys., Inc., 903 F.2d 1306, 1310 (10th Cir. 1990).

Plaintiffs read into evidence portions of Leon Ewell's deposition pursuant to Fed. R. Evid. 804. Ewell is an employee of Cello Corporation, which labels and packages defendant's bleach, and which assumed the defense in the instant case. Defendant voluntarily produced Ewell for a deposition, representing that he was the most knowl-edgeable person available to testify about the bleach label.

The district court instructed the jury that Ewell worked for Cello Corporation and not for defendant. Plaintiffs argue that the district court incorrectly applied Oklahoma law in disallowing Ewell's testimony as an admission of a party-opponent under Fed. R. Evid. 801(d)(2). Rule 801(d)(2)(D) includes as an admission against a party-opponent, "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Plaintiffs contend that because Cello is in the distribution chain for the bleach, under Oklahoma law Cello could be held liable and its employees were agents of defendant.

Plaintiffs, however, neither pleaded nor proved an agency relationship between defendant and Cello. Although Oklahoma products liability law might impose liability against Cello for its role in the chain of distribution, a plaintiff may not circumvent the required proof of agency because opposing counsel obtains the cooperation of a nonparty for purposes of facilitating discovery. The party asserting the existence of an agency relationship carries the burden of proving the relationship exists. Atchison, T. & S.F. Ry. v. Bouziden, 307 F.2d 230, 233 (10th Cir. 1962). The district court did not abuse its discretion by clarifying for the jury that Ewell worked for Cello and not defendant. This instruction fairly limited the use of Ewell's testimony in a manner consistent with the evidence already presented to the jury. See Hinds v. General Motors Corp., 988 F.2d 1039, 1046 (10th Cir. 1993).

AFFIRMED.