OSCN Found Document:COMBS v. BAYER AG et al.

 

 
 COMBS v. BAYER AG et al.2026 OK CIV APP 17Case Number: 123431Decided: 05/11/2026Mandate Issued: 06/11/2026COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2026 OK CIV APP 17, __ P.3d __

 

GINGER CASPER COMBS, Plaintiff/Appellant,
vs.
BAYER AG; BAYER CORPORATION a/k/a BAYER USA; BAYER HEALTH-CARE PHARMACEUTICALS, INC., Defendants/Appellees,
and
ROBERT W. LEVERIDGE; COMMUNITY HOSPITAL, LLC; BRETT NELSON, MD; and MCKESSON SPECIALTY DISTRIBUTION LLC, Defendant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE C. BRENT DISHMAN, TRIAL JUDGE
 

AFFIRMED

C. William Threlkeld, FENTON, FENTON, SMITH, RENEAU & MOON. Oklahoma City, Oklahoma For Plaintiff/Appellant

Michael Burrage, WHITTEN BURRAGE, Oklahoma City, Oklahoma For Defendant/Appellee Bayer Healthcare Pharmaceuticals, Inc.

And

Jennifer Greenblatt, Edward Dumoulin, GOLDMAN ISMAIL TOMASELLI BRENNEN & BAUM, LLP, Chicago, Illinois, Pro Hac Vice Bayer Healthcare Pharmaceuticals, Inc.

STACIE L. HIXON, CHIEF JUDGE:

¶1 Plaintiff Ginger Casper Combs (Combs) appeals summary judgment in favor Defendant Bayer HealthCare Pharmaceuticals Inc. on her claims for strict liability failure to warn and defective design or manufacture; negligence; various claims of fraud or negligent misrepresentation; and negligent training or education, all arising from production and/or distribution of "Magnevist." Magnevist is an FDA-approved contrast agent. Combs received an injection of Magnevist in 2016 to undergo magnetic resonance imaging (MRI). The crux of her claim is that Magnevist is made from gadolinium, which can be retained in the body after injection. She asserts that retention of this substance in the body causes a condition known as Gadolinium Deposition Disease (GDD), and that her injection caused a wide variety of serious and prolonged symptoms or reactions. She asserts that Bayer failed to adequately warn of this danger.

¶2 On summary judgment, Bayer asserted that Combs' state law failure to warn claims are preempted by federal law, because it was impossible for it to comply with state law, if it could not have unilaterally changed its approved warning label under federal regulations during the relevant time. Bayer also asserted it was entitled to summary judgment because Combs could not rebut a statutory presumption of non-liability for products subject to premarket approval by the federal government, 76 O.S.2021, § 57.2

¶3 The appeal was assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. 2021, ch.15, app.1, without further briefing. On review of the record on appeal, we affirm the trial court's judgment. 

BACKGROUND

¶4 Combs was involved in a motor vehicle accident in 2015 and alleges she sustained a neck injury. As part of her care, she was injected with Magnevist for an MRI on March 24, 2016. Combs alleges that she suffered an allergic reaction to Magnevist and continued to suffer from systemic allergic responses thereafter. She has described these reactions to include hives, rashes, burning sensations, loss of control of autonomic functions, significant injury to her vision, migraines, muscle pain, swelling, rapid heart rate, wheezing, shortness of breath and high blood pressure. Combs also contends that she later began experiencing hypersensitivity to environmental factors such as metals, electronic appliances, petroleum products, synthetics, dyes, cooking fumes, and light; developed scale-like lesions; experienced reduced kidney and liver function, fibrosis, and severe weight and hair loss, all of which she relates to her injection with Magnevist.

¶5 Combs initially brought this action in 2017 against the driver in the motor vehicle accident, as well as her physician and hospital for negligence associated with this allergic reaction. Combs added products liability and negligence claims against Bayer in 2018 as the manufacturer of Magnevist. 

¶6 Gadolinium is a heavy metal found in Magnevist and other Food and Drug Administration (FDA)-approved gadolinium-based contrast agents (GBCAs). It is undisputed that gadolinium can or does remain in the body after use. At the time of Combs' injection, FDA-approved warnings for Magnevist and other similar products warned that this retention posed a risk to patients with kidney disease of developing a condition known as nephrogenic systemic fibrosis (NSF). 

¶7 Bayer moved for summary judgment on each of Combs' claims. Among other arguments, Bayer asserted Combs' claims were preempted by federal law. It contended it was impossible to comply with both state and federal law because federal law would not have allowed it to unilaterally modify its warning label after FDA approval under the facts of this case. To do so, Bayer contended it would have needed reasonable evidence of a causal association between Magnevist and clinically significant adverse health consequences, i.e., death or serious injury. Bayer contended no such evidence existed in March 2016. In response, Combs essentially asserted that Bayer knew and/or evidence existed before March 2016 that gadolinium was retained in the body and that this evidence was sufficient evidence of a serious risk of harm to compel Bayer to unilaterally issue new warnings for Magnevist, meaning that her claims were not preempted. 

¶8 Combs appeals.

STANDARD OF REVIEW

¶9 Although a trial court deciding whether summary judgment is appropriate considers factual matters, "the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." Carmichael v. Beller, 1996 OK 48914 P.2d 1051Id. The Court will "examine the pleadings and evidentiary materials to determine if there is a genuine issue of material facts." Id. All inferences and conclusions to be drawn therefrom are viewed in the light most favorable to the nonmoving party. Id 

ANALYSIS

¶10 Combs asserts four errors of the trial court on appeal: (1) the court's finding that Plaintiff's failure to warn claim was preempted by federal law; 76 O.S.2021, § 57.2

1. The material facts

¶11 Before addressing the applicable law, the Court is compelled to address Combs' attempts to dispute Bayers' proposed material facts and Combs' proposed additional material facts precluding summary judgment.

¶12 To follow Combs' version of "material facts," Bayer knew of significant adverse consequences of gadolinium deposition in patients of normal renal function before she was injected with Magnevist in 2016. However, according to Combs, rather than revise its label, Bayer supposedly engaged in litigation-style tactics to influence the FDA, hide the adverse consequences and avoid updating its warnings. Supposedly, a witness for Bayer testified that this conduct was motivated by financial interest and without regard to consumer safety. 

¶13 Combs submitted 35 exhibits in response to the summary judgment motion, filed entirely under seal, along with her response. summary judgment misstate the evidence or are plainly not supported by it at all. 

¶14 The materials presented by both parties shows that evidence existed before Combs' March 2016 injection that gadolinium could be or is retained in the body and that Bayer or the FDA was aware of it. One could also conclude that evidence of reported adverse reactions existed, and that the FDA and Bayer were aware of them and the development of GDD theory and appeared to be considering the issue. However, throughout the evidence of record, one thing is consistent--Bayer (and others) stated there was no evidence of a causal relationship between reported adverse symptoms and gadolinium retention in patients of normal renal function. these are the key undisputed facts which were established on summary judgment, Combs' unsupported assertions notwithstanding.

2. Preemption of Combs' claims for failure to warn

¶15 Bayer asserted on summary judgment that each of Combs' claims based on a failure to warnet seq (West 2024). She also contends that whether Bayer could have amended its warnings under federal regulations or whether her claim was preempted is a jury question.

¶16 Oklahoma law "generally requires a manufacturer to warn consumers of danger associated with the use of its product to the extent the manufacturer knew or should have known of the danger." Edwards v. Basel Pharms., 1997 OK 22933 P.2d 298Id. "Their beneficial dissemination depends on adequate warnings. . . ." Id. The adequacy of warnings is determined by state law and as Combs points out, Edwards held that compliance with minimum standards "does not necessarily complete the manufacturer's duty." Id. at ¶ 17.

¶17 At the same time, it is well-recognized that prescription drugs are regulated by the FDA. FDA approval of a new drug application includes approval of its proposed label. See generally 21 U.S.C. § 355 (West 2024); 21 C.F.R. § 314.105(B)(2016). Bayer asserts it could not have revised its warnings under FDA regulations, and thus Combs' state law claims are preempted because it was impossible to comply with both state and federal law regarding its warnings.

¶18 In Wyeth v. Levine, 555 U.S. 555 (2019), the United States Supreme Court addressed when or if federal law preempted state law claims for failure to warn against drug manufacturers subject to regulation by the FDA. The Court recognized that the intent of Congress is the touchstone, and "particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" Id.

¶19 Thus, the Court examined the history of the FDCA, the FDA's powers to protect public health and its pre-market requirements of manufacturers. Id. at 567. It recognized that in 1962, Congress shifted the burden from the FDA to manufacturers to establish a drug was safe for use, as well an amendment to the FDCA to provide that state law is invalidated only upon a "direct and positive conflict" with the FDCA preserving state law claims. Id. at 567. Further, the Court recognized that in 2017, Congress granted the FDA statutory authority "to require a manufacturer to change its drug label based on safety information that becomes available after a drug's initial approval." Id. at 578 (citing 21 U.S.C. § 901(a)). The Wyeth Court interpreted this change as adopting a "rule of construction to make it clear that manufacturers remain responsible for updating their labels." Id. at 568.

¶20 Thus, state law claims for failure to warn are not expressly preempted. However, as Wyeth also recognized, though a "demanding defense," claims may still be preempted if the manufacturer could not have changed its label under governing law and it is impossible to comply with both state and federal law. Whether such a claim is preempted is a matter of law for the court to decide. Merck Sharp & Dohme Corp. v. Albrecht, 587 U.S. 299, 317-18 (2019).

¶21 As applied here, though FDA approval of new drug applications includes the proposed label, "FDA regulations permit drug manufacturers to change a label to 'reflect newly acquired information' if the changes 'add or strengthen a . . . warning' for which there is 'evidence of a causal association.'" 21 C.F.R. § 314.70(c)(6)(iii)(A). Merck Sharp, 587 U.S. at 300. If a plaintiff demonstrates that a defendant could unilaterally change the label under this "changes being effected" or "CBE" regulation, the burden shifts to the manufacturer to show "by 'clear evidence that the FDA would not have approved the labeling change. . . .'" Utts v. Bristol-Myers Squibb Co., 251 F. Supp. 3d 644, 661 (S.D.N.Y. 2017). 

¶22 To avoid preemption, Combs' warning claims must be based on a deficiency Bayer could have corrected under the CBE, i.e., that newly acquired information existed that would allow Bayer to unilaterally amend its warnings under the CBE. Under federal regulations in effect at the time of Combs' alleged injury, "newly acquired information" was defined as:

data, analyses, or other information not previously submitted to the [FDA], which may include (but are not limited to) data derived from new clinical studies, reports of adverse events, or new analyses of previously submitted data (e.g., meta-analyses) if the studies, events or analyses reveal risks of a different type or greater severity or frequency than previously included in submissions to FDA.

21 C.F.R. § 314.3 (2010). Labeling must be revised to include a warning about newly acquired evidence of a "clinically significant hazard as soon as there is reasonable evidence of a causal association with a drug; a causal relationship need not have been definitely established." 21 C.F.R. § 201.57(c)(6)(i)(2015). Id.; 71 Fed. Reg. 3922-01, 3496 (Jan. 24, 2006); see also McGrath v. Bayer HealthCare Pharmaceuticals, 393 F. Supp. 3d 161 (E.D.N.Y. 2019)(citing 21 C.F.R. § 201.57(c)(6)(i); 71 Fed. Reg. 3922-01, 3496 (Jan. 24, 2006); see also Klein v. Bayer Healthcare Pharmaceuticals, 2019 WL 3945652, *5 (D.N.V. Aug. 21, 2019)). 

¶23 Bayer moved for summary judgment on this issue and asserted that the undisputed facts showed that there was no newly acquired evidence to allow it to change its warnings between the time its last warning was approved in 2014 and Combs' injection. Combs was obligated to present evidence to the contrary.

¶24 It was undisputed on summary judgment that Magnevist is a gadolinium-based contrast agent first approved for use by the FDA in 1988. Prior to Combs' reaction in 2016, Magnevist warned of a risk of NSF to patients with renal impairments but did not warn of the potential for gadolinium retention or risk of related adverse reactions in patients with normal renal function. However, Combs provided nothing to demonstrate that reasonable evidence of a causal association between Magnevist or similar GBCAs and these events existed before her injection.

¶25 Thus, from our review of the record, Combs provided no newly acquired evidence supporting Bayer's ability to modify its label under the CBE regulation. The record contains documents from Bayer or others which state, more than once, that though aware of gadolinium retention and reports of adverse events, it had not identified or there was no evidence of a causal association between these reports and GBCAs. Combs supplied nothing to dispute those statements. 

¶26 Rather, Combs relied heavily on evidence that gadolinium was retained in the body alone to suggest Bayer could have issued a unilateral warning. This assertion is supported mostly by stating throughout her response brief that gadolinium is "toxic," and characterizing Bayer's knowledge that gadolinium is retained as knowledge that this "toxic free gadolinium" remains in the body. 

¶27 Combs also suggested that any conclusion the FDA reached was tainted because it relied on Bayer and others to provide information regarding the risks, characterized by such statements of proposed fact as "Bayer relentlessly defended its warning label for Magnevist while withholding and/or remaining willfully blind to known risks associated with Magnevist in an attempt to prevent a label change." She also proposed that Bayer's internal documents demonstrate it was clearly aware of the risk. Neither these, nor any similar statements in Combs' briefing, are supported with evidence.

¶28 Meanwhile, Combs does not dispute Bayer's evidence that in 2017, the FDA engaged in a multi-year effort to analyze whether gadolinium retention caused adverse health effects, or that the committee conducting that analysis agreed the literature studied did not establish a causal association between reported adverse events and gadolinium retention in patients of normal renal function. 

¶29 In 2017, the FDA issued a drug safety communication stating that it had evaluated scientific publications and adverse events reported to the FDA. Later that same year, the FDA released another safety announcement stating, "gadolinium retention has not been directly linked to adverse health effects in patients with normal kidney function," though it noted the retention of gadolinium in the body. In 2018, the FDA approved a revised label for gadolinium-based products stating, "clinical consequences of gadolinium retention have not been established in patients with normal renal function," though it mentions there are reports of adverse events in patients with no established causal link.

¶30 While these events occurred after Combs' injection, this evidence bolsters Bayer's assertion that newly acquired evidence of this causal association, as defined by federal regulations, did not exist in 2016 that would have allowed it to unilaterally issue a revised warning. Combs supplied nothing to dispute that contention, and as noted, no evidence that the FDA's review was in any way "tainted." If information that met the definition of newly acquired evidence existed before her injection, Combs was obligated to supply it on summary judgment. She did not. To the extent the trial court concluded Combs' claims based on failure to warn were preempted by federal law, we affirm. Because we find Combs did not establish Bayer could have unilaterally issued a revised warning without FDA approval, we do not address whether Bayer established that the FDA would not have approved a proposed revised warning on this matter. 

3. Rebuttable presumption under Oklahoma law

¶31 As an alternative argument, Bayer also argued that it was entitled to summary judgment because Combs could not rebut a presumption that Bayer is not liable for any injury caused by formulation, labeling or design of a product subject to premarket approval under 76 O.S.2021, § 57.2

¶32 Section 57.2(A) provides:

A. In a product liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the formula, labeling, or design for the product complied with or exceeded mandatory safety standards or regulations adopted, promulgated, and required by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused harm.

Bayer established on summary judgment that Magnevist was subject to premarket approval by the FDA and that the FDA concluded in 1988 that it had adequate information to demonstrate that Magnevist was safe and effective. Combs did not dispute that evidence, or that Bayer was therefore entitled to the rebuttable presumption set forth in section 57.2(A). However, Combs argued she was able to rebut the presumption pursuant to 57.2(B).

¶33 Section 57.2(B) provides that a claimant may rebut the presumption by establishing:

1. The mandatory federal safety standards or regulations applicable to the product and asserted by the defendant as its basis for rebuttable presumption were inadequate to protect the public from unreasonable risks of injury or damage; or

2. The manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action.

Combs asserts on appeal that the trial court erred by granting summary judgment because both of these considerations require a jury determination. We reject this argument for two reasons.

¶34 One, Combs made no argument in her response on summary judgment that either of these provisions applied or made any attempt to rebut the presumption. That argument is therefore waived. See generally State ex rel. Oklahoma State Bd. of Med. Licensure & Supervision v. Rivero, 2021 OK 31489 P.3d 36Copeland v. Lodge Enterprises, 2000 OK 364 P.3d 695

¶35 As noted above, Combs did not support her assertions that Bayer withheld or misrepresented information or material relevant to the FDA's consideration of Magnevist, whether during initial approval or later deliberations about gadolinium deposition. Section 57.2(B)(2) clearly does not apply. With respect to section 57.2(B)(1), Combs did not, however, present any evidence to address whether the FDA's safety standards or regulations were inadequate to protect the public from unreasonable risk of injury or damage. She supplied evidence of her symptoms and her physician's opinion after an examination in 2021 that she suffers from GDD. 

¶36 Notwithstanding waiver of these issues, Combs did argue before the trial court that the rebuttable presumption did not apply at all under section 57.2(D), which provides that:

This section does not extend to manufacturing flaws or defects even though the product manufacturer has complied with all quality control and manufacturing practices mandated by the federal government or an agency of the federal government, or if the product becomes the subject of a recall, or is no longer marketed, pursuant to any order, consent decree, or agreement between the manufacturer and any federal agency.

¶37 Combs asserts that the rebuttable presumption does not apply because the European Medicines Agency, an agency of the European Union, suspended sale or marketing of Magnevist in 2018. She reasons that "[i]t is apparent that the Oklahoma legislature intended the orders of 'any federal agency' causing a product subject to premarket approval to 'no longer [be] marketed' in any geographic area within that agency's jurisdiction" to eliminate the presumption.

¶38 This argument is entirely without merit. We do not limit our consideration of a statute to a single word or phrase in isolation. Edmondson v. Pearce, 2004 OK 2391 P.3d 605the federal government," and conclude it means the federal government of the United States of America, of which Oklahoma is a member. We see nothing in the statute that signals an intent of the Oklahoma Legislature to defer to the judgment of the EU or its agencies, even if those agencies are "federal" in nature. To the extent the trial court granted judgment based on the application of the foregoing presumption, the trial court did not err.

4. The learned intermediary doctrine

¶39 Combs also argued the trial court erred by determining her claims were barred by the learned intermediary doctrine.

¶40 The learned intermediary doctrine is an exception to a manufacturer's duty to warn the ultimate consumer of danger associated with a prescription drug. Edwards, 1997 OK 22see also McKee v. Moore, 1982 OK 71648 P.2d 21Edwards states, the doctrine "shields manufacturers of prescription drugs from liability if the manufacturer adequately warns the prescribing physicians of the dangers of the drug." 1997 OK 22atId. at ¶ 8 (citation omitted). Thus, a manufacturer may avoid liability for failure to warn the patient, if it has adequately warned the physician.

¶41 Based on the language above, Combs reasons that Bayer is not entitled to protection unless it first adequately warned her physician. The language above addresses the issue of who the manufacturer must warn and provides the duty to warn has been met if the physician has been warned, and liability is precluded. However, the role of a learned intermediary remains relevant on the issue of proximate cause, even if that duty to warn has been breached. "In the duty to warn context, assuming the plaintiffs have established both duty and a failure to warn, plaintiffs must further establish proximate causation by showing that had defendant issued a proper warning to the learned intermediary, he would have altered his behavior and the injury would have been avoided." Eck v. Parke, Davis & Co., 256 F.3d 1013, 1018 (10th Cir. 2001)(Okla.)(applying the learned intermediary doctrine adopted in Edwards.)

¶42 As Eck reasons, if Combs established that Magnevist was provided without a required warning, "a rebuttable presumption will arise that the consumer would have read any warning provided by the manufacturer, and acted so as to minimize the risks." Id. at 1018 (quoting Cunningham v. Charles Pfizer & Co., 1974 OK 146532 P.2d 1377Id. This presumption can be rebutted by "establishing that although the prescribing physician would have 'read and heeded' the warning or additional information, this would not have changed the prescribing physician's course of treatment." Id. at 1019. If successful, the burden shifts back to Combs to "either discredit the physicians' testimony or call into question the substance of the testimony, or otherwise demonstrate that the alleged failure to warn was the proximate cause of their injuries." Id. Such a showing would require Combs to "demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff." Id.

¶43 Eck is persuasive. The Court will assume Combs is entitled to a rebuttable presumption that, if adequate warnings were provided, her physician would have taken heed of them. Bayer presented testimony that Combs' physician, Dr. Nelson, testified in 2024 that he would not have changed anything about his treatment, knowing what he knows today about "risks of anaphylactic and allergic reaction, retained gadolinium, and so-called gadolinium deposition disease." 

¶44 Combs claimed that "Dr. Nelson testified he was not aware of the clinical consequences of gadolinium in the body of humans with normal renal function." She reasons, therefore, the learned intermediary doctrine does not apply. As explained, it is not necessary for Bayer to establish that it warned Dr. Nelson for it to raise the learned intermediary doctrine on the issue of proximate cause. Moreover, the cited testimony actually states:

Q. Based on your experience and review of the medical literature, does retention of gadolinium from GBCAs cause any clinical consequences in persons such as
Ms. Combs with normal kidney function?

A. No.

Q. Based on your experience and review of the medical literature, do gadolinium-based contrast agents cause long-term negative symptoms in persons such as
Ms. Combs with normal kidney function?

MR. CROWLEY: Object to form.

THE WITNESS: No. 

That testimony does not discredit Dr. Nelson, call into question the substance of his testimony, or establish that the risk of gadolinium deposition was so high it would have changed his course of treatment. In fact, it demonstrates the opposite. Combs failed to present evidence of a material fact in dispute on proximate cause given Dr. Nelson's testimony. To the extent the trial court granted summary judgment on this ground, the court did not err.

CONCLUSION

¶45 For the foregoing reasons, we find that Combs' claims based on failure to warn are preempted by federal law, regardless of legal theory. We also find that Combs failed to present material facts in dispute on the issue of her ability to rebut the presumption that Bayer was not liable for design or labeling defect pursuant to 76 O.S.2021, § 57.2

¶46 AFFIRMED.

WISEMAN, P.J., and FISCHER, J., concur.

FOOTNOTES

See generally Davis v. McKesson Corp., 2019 WL 3532179, *2 (D. Ariz. Aug. 2, 2019).

warn claims preempted. All four of Combs' propositions of error refer in some way to a failure to warn or revise warnings and make no mention of product design or her other claims. Supreme Court Rule 1.36 provides that appeals from summary judgment are commenced by filing of a Petition in Error. The Court's prescribed Rule 1.301, Form 5, directs an appellant to include as Exhibit C "each point of law alleged as error" and cautions the user to avoid general statements such as "judgment not supported by law.'" "Under Rule 1.36, where briefs are absent, the petition in error plays a critical role in determining what issues the appellant has preserved for consideration on appeal." Choate v. Laws. Title Ins. Corp., 2016 OK CIV APP 60385 P.3d 670see also Berkson v. State ex rel. Askins, 2023 OK 70532 P.3d 36Siemens Financial Services, Inc. v. MTG Guarnieri Manuf., Inc., 2012 OK CIV APP 1269 P.3d 36vague to preserve the issues on appeal. Rather, it clearly sets out an intent to appeal from claims arising only from failure to warn. Our conclusion that Combs does not intend to appeal summary judgment on any of her other claims is further bolstered by the fact that nothing in her allegations of error or summary of the case refers to a claim based on anything other than failure to warn. We find these issues were not preserved for appeal, and do not address them.

(iii) Changes in the labeling to reflect newly acquired information, except for changes to the information required in § 201.57(a) of this chapter (which must be made under paragraph (b)(2)(v)(C) of this section), to accomplish any of the following:

(A) To add or strengthen a contraindication, warning, precaution, or adverse reaction for which the evidence of a causal association satisfies the standard for inclusion in the labeling under § 201.57(c) of this chapter;

(B) To add or strengthen a statement about drug abuse, dependence, psychological effect, or overdosage;

(C) To add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product;

(D) To delete false, misleading, or unsupported indications for use or claims for effectiveness; or

(E) Any labeling change normally requiring a supplement submission and approval prior to distribution of the drug product that FDA specifically requests be submitted under this provision.

21 C.F.R. § 314.70 (2008).

The line Wyeth and PLIVA [Inc. v. Mensing,564 U.S. 604, 131 S.Ct. 2567 (2011)] thus draw between changes that can be independently made using the CBE regulation and changes that require prior FDA approval also makes some pragmatic sense. CBE changes rest on the existence of "newly acquired information." 21 C.F.R.
§ 314.70(c)(6)(iii). A state law duty to initiate such a change is therefore not by its nature a second guess of an FDA judgment. Wyeth, 555 U.S. at 578--79, 129 S.Ct. 1187. To the extent that the underlying policy issue is one of who decides whether and how a drug can be marketed, the line so drawn lets the FDA be the exclusive judge of safety and efficacy based on information available at the commencement of marketing, while allowing the states to reach contrary conclusions when new information not considered by the FDA develops. The CBE regulation, too, covers virtually all situations in which new information indicates new or greater risks, or misleading claims of efficacy. By hinging preemption on the availability of that procedure in a particular case, Wyeth effectively reserves the launch of new drugs to the expertise of the FDA, but then preserves a wide scope for the states in requiring manufacturers to respond to information not considered by the FDA.

In re Celexa and Lexapro Marketing and Sales Practices Litigation v. Forest Laboratories, Inc., 779 F.3d 34, 40 (1st Cir. 2015).

Merck Sharp, FDA labeling requirements are also designed to exclude exaggeration of risks, or speculative or hypothetical risks, that "could discourage appropriate use of a beneficial drug." 587 U.S. 299, 304 (quoting 73 Fed. Reg. 49605-597606 (2008)).

reasonable evidence" existed of a causal association was a question for the jury because the point at which reasonable evidence exists is a fact question for the jury. As mentioned above, the United States Supreme Court holds that preemption in this context is not a jury question. See Merck Sharp, 587 U.S. at 317-18. Moreover, Combs did not provide any evidence demonstrating or recognizing a causal association during the relevant time.

after the FDA approved the most recent label and had not been considered by the FDA.

Though not binding authority, the Court's determination is consistent with a host of federal cases finding state law failure to warn claims regarding Magnevist or other GBCAs are preempted by federal law. See e.g. McGrath, 393 F. Supp. 3d 161 (E.D.N.Y. 2019); Sabol v. Bayer HealthCare Pharms., Inc., 439 F. Supp. 3d 131 (S.D.N.Y. 2020); Langara v. Bayer Corp., 2024 WL 5186723 (D. Conn. Dec. 20, 2024); Klein v. Bayer HealthCare Pharms. Inc., 2019 WL 3945652 (D. Nev. Aug. 21, 2019); Goodell v. Bayer Healthcare Pharms. Inc., 2019 WL 4771136 (D. Mass. Sept. 30, 2019); Mahnke v. Bayer Corp., 2020 WL 2048622 (C.D. Cal. Mar. 10, 2020); Smith v. GE Healthcare Inc., 2020 WL 1880787 (W.D. La. Mar. 31, 2020); Chennault v. Bayer Corp., 2022 WL 17814626 (S.D. Tex. Nov. 28, 2022); Drescher v. Bracco Diagnostics Inc., 2020 WL 699878 (D. Ariz. Jan. 31, 2020), R&R adopted, 2020 WL 1466296 (D. Ariz. Mar. 26, 2020); Thomas v. Bracco Diagnostics Inc., 2020 WL 1016273 (W.D. La. Feb. 27, 2020, R&R adopted, 2020 WL 1243389 (W.D. La. Mar. 13, 2020).

See e.g. Combs' Ex. 1, Kanal, Emanuel, MD. et al, "Residual or Retained Gadolinium: Practical Implications for Radiologists and Our Patients," Radiology, Vol. 275: No. 3-June 2015, p. 630 ("Gadolinium-based contrast agents (GBCAs) have been used internationally for more than a quarter century in more than 100 million patients. They are indispensable adjunctions to magnetic resonance (MR) imaging in a broad spectrum of diseases for detection of therapeutic guidance. Their accumulated safety record is extraordinarily positive, with serious adverse reactions in the range of 0.03% of all administrations. . . .") While evidence provided on summary judgment suggests growing knowledge of gadolinium deposition over time and questions about whether it causes adverse reactions, it does not give rise to a reasonable inference that the FDA's standards or regulations are inadequate to protect the public from an unreasonable risk of harm or damage.